In re COATS.

(Supreme Court, Appellate Division, First Department. June 6, 1902.)

1. STOCKHOLDERS—EXAMINATION OF CORPORATION BOOKS.
 The right of a stockholder to examine corporation books accrues as well to a stockholder in a fire insurance company as any other corporation.

2. MANDAMUS—AFFIDAVITS—PRESUMPTION AS TO TRUTHFULNESS.
 On application for a peremptory writ of mandamus the affidavits of respondent must be taken as true, as a peremptory writ can issue only on conceded facts.

3. SAME—APPLICATION FOR INSPECTION OF CORPORATION BOOKS—SUFFICIENCY OF SHOWING.
 Petitioner applied for mandamus to compel defendant insurance company to allow him to inspect its books, alleging that he owned about one-fourth of all the stock; that from reports showing a decrease in surplus and increase in losses he had become alarmed for the security of his investment, but had been denied access to the books and refused specific information as to the management and condition of the company; and that he had made a formal offer to purchase all the stock of the company at a price higher than market quotations. Respondent's affidavits showed that petitioner had long been employed, and at the time of acquiring this stock was still employed, as stenographer by a man who was attempting to gain control of the company, and who had made an offer to purchase all the stock, similar to that made by petitioner; that this person bore the reputation in insurance circles of being a "wrecker," and had been denounced in trade journals and by an insurance commissioner for his connection with unsavory transactions resulting in companies with which he was connected going into liquidation; and that petitioner was merely acting as a tool to enable this person to obtain control of the company. *Held*, that an order granting an inspection was not authorized by the facts.

4. SAME—NATURE AND EXTENT OF EXAMINATION.
 An order granting an inspection of all respondent's books and papers covering a certain period, without limitation as to the place or duration of the investigation, was too broad in any event.

5. SAME—DENIAL OF APPLICATION WITHOUT PREJUDICE.
 The inspection should be denied, however, with leave to renew the application.

Appeal from special term, New York county.

Petition by Russell R. Coats for a peremptory writ of mandamus to compel respondent Empire City Fire Insurance Company to allow petitioner to inspect its books. From an order granting the petition, respondent appeals. Reversed.

The petitioner avers that he is the holder of about one-fourth of the capital stock of the Empire City Fire Insurance Company, and that from the reports of the company, which show a decrease in surplus and an increase in losses, and from its failure to continue the payment of dividends, he became alarmed for the security of his investments, but his request for specific information as to the financial management and condition has been refused, that he had made a formal offer to purchase all the stock of the company at par, or above the market quotation, but such offer to the president and directors was not considered; that subsequently three serious fires in Norfolk, Va., in Waterbury, Conn., and Paterson, N. J., occurred, and he requested access to the books of the company, but was refused. In opposition to the motion made by the petitioner for a peremptory writ of mandamus for inspection of the books of the company, affidavits were submitted particularly with a view to showing that the petitioner, Coats, is not the real party in interest, but that he is acting for other persons, who are bent on getting possession of the company for the purpose of throwing it into liquidation. Thus it is stated, and not denied, that Coats for many years has been employed as a stenographer by Price, who, with Baker, is endeavoring to get control of the company; and it is averred that within three months there was transferred to Coats upon the books of the company no less than $40,000 worth of stock, some of which had passed through Baker's hands, who, it is conceded, has been actively engaged in purchasing the stock of this company, writing letters to stockholders derogatory of the company, and offering them exceptional prices, and to the president himself the sum of $5,000, and an assured position in other work, for stock transfers. The purposes of Price are disclosed by his letter to the president of the company, in which he says he "represents the largest single owner," and is desirous of obtaining control, and is in a position to purchase all of the stock provided upon terms attractive to his principals, and he had recently purchased the Eagle Fire Insurance Company. In connection with such operations, particularly concerning the Hanover Fire Insurance Company, proof was offered that Price had been characterized and condemned in the Weekly Underwriter, an insurance periodical, as an avowed wrecker; and that the purchase and subsequent liquidation of the Merchants' Fire Insurance Company, of which Price held stock, was similarly severely denounced by an insurance commissioner. There is but one affidavit in reply, which is by Price, and therein he asserts that Baker is not his agent, that all reference to him (Price) in the affidavits is irrelevant, that he does not intend to wreck the company, and that statements to that effect are untrue. The special term granted a peremptory writ to the petitioner commanding the company to exhibit to him "and his attorney and accountants all the books of accounts, vouchers, and letters and other papers, * * * and all minutes * * * covering the period from September 1, 1901, to the time of such exhibition; and to permit them and each of them freely to examine the same, and to take extracts therefrom, * * * from day to day, during ordinary business hours, and in such a manner as not to interrupt more than necessary the business of the said corporation." From the order so entered the insurance company appeals.

Argued before HATCH, McLAUGHLIN, O'BRIEN, and IN-GRAHAM, JJ.

Charles C. Bennett, for appellant.
William Rumsey, for respondent.

O'BRIEN, J. In Re Steinway, 159 N. Y. 250, 53 N. E. 1103, 45 L. R. A. 461, it was held that a stockholder has the right to in-

spect the books of his corporation at a proper time and place and for
a proper purpose. This right of the stockholder, we think, applies
as well to a fire insurance company as to any other corporation. It
is, therefore, a matter of discretion whether the inspection shall be
allowed or not, and this necessarily depends upon whether the facts
show that the purpose is or is not a proper one. So far as appears
from the petition herein, the object sought by the inspection is en-
tirely proper. If, however, the affidavits in opposition sufficiently
show that the petitioner is not the real party in interest, but is a mere
dummy for those seeking to get control of the company, and that
the purpose of Price or Baker was in fact to get possession of the
company in order to destroy it, and the petitioner was closely con-
nected with them in such a scheme, so that an inspection is sought
merely to obtain information that would, in that connection, be of
assistance to the parties, the application should have been denied. In
determining the force of affidavits upon an application for a peremp-
tory writ of mandamus, those submitted by a respondent must be
taken as true. They are to be regarded just as a pleading that has
been demurred to by the petitioner, for it is only upon conceded facts
that a peremptory writ can issue. Applying this rule, it remains to
determine whether the present was a proper case for the issuance of
a peremptory writ. Had Price or Baker made the application for an
inspection, it would undoubtedly have been denied upon the proofs
submitted tending to show that the object for which the information
was sought was neither proper, nor legitimate, nor in the interests of
the stockholders of the company, but was in fact to obtain informa-
tion which might be used to secure control of the company for the
purpose, as in the instances cited, of throwing it into liquidation. Will
a court permit to be done indirectly that which it would not sanction
if applied for directly? We think not. The question, therefore, real-
ly resolves itself into whether or not the company has presented facts
from which the inference reasonably and naturally follows that Coats,
the petitioner, is not the real party in interest, but is a mere dummy
for the persons named, who are seeking to get control of the com-
pany, and with whom he is acting in concert. In support of the con-
tention that this represents the real attitude and relation of Coats
as a stockholder we have the facts, which are not denied, and, though
they had been, must be regarded as true, that he had not been known
as a man of means, but had been employed by Price for many years
as a stenographer; and that the transfer of the large amount of stock
which he now claims to own, and which is worth a great many thou-
sands of dollars, was made to him while still so employed. This
naturally suggests the inquiry as to where he got the large amount
of money necessary to purchase such a large amount of stock, and
how it was that, without some concert of action, he should, by a
strange coincidence, have his money invested in the stock of a com-
pany of which his employer was then making strenuous efforts to se-
cure control. Although employed as a stenographer, he appears not
only to have had money enough to purchase the large block of stock
now standing in his name, but, according to the averment of his petition,
he offered to purchase all the stock of the company. When this aver-

ment is considered in connection with an almost identical offer made by Price in his letter to the president of the company, the conclusion is almost irresistible that Coats and Price are acting together. With respect to these applications, it must be remembered that the court is concerned not alone with according to a petitioning stockholder all the rights to which he is entitled with respect to information which he should properly receive from the officers and the books of the company, but must, in that connection, keep in mind the rights and interests of other stockholders, and of the corporation itself; and, where there is a strong and natural inference that the granting of the application is inimical and destructive of these rights and interests, it would be an abuse of discretion to grant the application. The conclusion reached by us upon a reading of this record is that the respondent made a strong case tending to show that it would be inimical to the interests of every one else concerned in the company to compel it to turn over to either Price or Baker, in the language of the writ granted at special term, "and his attorney and accountants, * * * all the books of account, vouchers, and records and other papers, * * * and all minutes * * * covering the period from September 1, 1901, to the time of such exhibition, and to permit them and each of them freely to examine the same and take extracts therefrom." That is the relief granted to this petitioner, without restriction as to the place or duration of the inspection, and without adequate provision made against interfering with the proper administration of the business of the company while such an unlimited inspection or exhibition proceeds; and if the company is right in its assertion that Coats, the petitioner, really represents either Price or Baker or both, or is acting in concert with them, then the extent of the privilege accorded and the injury that might result therefrom are clearly foreshadowed in a way that would make it, as it seems to us, reprehensible for a court to lend its aid in the purpose sought. On the other hand, we desire not unduly to restrict the right of a stockholder to have any legitimate information to which he is entitled; nor do we desire to intimate that specific information, if properly applied for by either the petitioner or Price or Baker as stockholders, should not be given. The order entered, in any event, was too broad in not providing proper safeguards against abusing the right of examination granted. Upon the showing made, however, the application should have been denied, and for that reason the order must be reversed, but we think with leave to renew the application upon papers from which the court may see, whoever the petitioner may be, that he is the real party in interest, and in good faith desires certain definite information. This, under proper restrictions, the special term can compel the company to furnish or allow the stockholder to obtain by a proper inspection of the books.

The order should accordingly be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs, but with leave to renew the application in the manner indicated.

HATCH and INGRAHAM, JJ., concur; McLAUGHLIN, J., concurs in result.