STATE ex rel. WILLIAM W. HUMPHREY v. MONIDA & YELLOWSTONE STAGE COMPANY and Others.[1]

February 18, 1910.

Nos. 16,242—(36).

**Right of Stockholder to Inspect Books of Corporation.**

Under the provisions of section 2869, R. L. 1905, the right of a stockholder to inspect the books of a corporation is not an unqualified right, but is subject to the condition that the information is not sought from mere curiosity, or for an improper purpose.

**Same — Inspection for Hostile Purpose Proper.**

The use of the information for the purpose of prosecuting a claim of the stockholder against the corporation is a proper purpose.

**Same — Demand and Refusal — Mandamus.**

Evidence examined, and *held:*

(1) The evidence is sufficient to sustain a finding that a proper demand was made by the relator for permission to examine the books of appellant

[1]Reported in 124 N. W. 971, 125 N. W. 676.

[Note]  For right of stockholder to inspect books of corporation, see notes in 45 L.R.A. 446, and 20 L.R.A. (N.S.) 185.

110 M.—13

corporation, although the demand was not made at the general offices of the company.

(2) The evidence was sufficient to support the finding of the court that the demand was refused.

(3) The court did not err in directing a writ of mandamus to issue requiring appellants to permit the relator, or his agent or attorney, to examine the books of the corporation.

Relator petitioned the district court for Ramsey county for an alternative writ of mandamus directed to defendant corporation, its president and treasurer, to permit relator, a stockholder, to examine its books and accounts. The writ was granted, defendants made return thereto, and the relator demurred to the return. The case was tried before Olin B. Lewis, J., who ordered that a peremptory writ issue. Defendants' motion for judgment in their favor or for a new trial was denied. From the order denying their motion, they appealed. Affirmed, without prejudice to either party to move for any modification of the order which to it may seem desirable.

*James R. Hickey,* for appellants.

The request to inspect books, for refusal of which the mandamus is asked, must be alleged to have been made at a proper time and place, and of the proper person and to have been refused. 2 Cook, Corp. (6th Ed.) § 516. The stockholder must state the reason why he desires inspection and his application must be made at the general office of the company. Rex v. Wilts, 3 Ad. & El. 477. The application for mandamus is addressed to the sound discretion of the court. To hold that every stockholder may demand an examination when he pleases and to apply for a writ of mandamus to enforce an absolute right would be prejudicial to the interests of all corporations and their stockholders. 2 Cook, Corp. (6th Ed.) § 514. A director who is actively organizing a rival company has no right to examine the letter files of the former company, in order to aid the latter company. The secretary may forcibly take them from him. Heminway v. Heminway, 58 Conn. 443. Mandamus will not issue where there is every reason to believe that the applicant for inspection in-

tends to make an improper use of the information obtained.    State
v. Einstein, 46 N. J. L. 479; Phoenix v. Com., 113 Pa. St. 563; In
re Kennedy, 75 App. Div. 188.

*Edward B. Graves* and *Martin H. Albin,* for relator.

At common law a stockholder in a corporation had the right to in-
spect its books.    10 Cyc. 954.    The courts enforced the right with
caution, but in this country the restrictions have been constantly re-
laxed so that, even where there is no statute guaranteeing the right,
the courts recognize the absolute right of the stockholder to inspect
the books of the company at reasonable times and for a proper pur-
pose, and that the mere desire to acquaint one's self with the affairs
of the company is such a purpose.    4 Thompson, Corp. § 4418; Wait,
Ins. Corp. § 504.    The doctrine of the law is that the books and
papers of the corporation, though of necessity kept in some one's
hand, are the common property of the stockholders.    Com. v.
Phoenix, 105 Pa. St. 111.    It cannot be denied that it is the right
of everyone to see that his property is well managed, and to have
access to the proper sources of knowledge in this respect.    Cockburn
v. Union Bank, 13 La. An. 289; State v. Bienville, 28 La. An. 204.
But to remove any doubt as to the existence of an absolute right, the
legislature has passed a statute specifically guaranteeing this right to
the stockholders.    R. L. 1905, § 2869.    These statutes have every-
where been held not only to be declaratory of the common law, but
to enlarge and extend this right.    26 Am. & Eng. Enc. (2d Ed.) 951;
Stone v. Kellogg, 165 Ill. 192; Cincinnati v. Hoffmeister, 62 Oh.
St. 189.    The statute is mandatory, and the right to examine the
books is an absolute one which the courts must enforce.    In re Stein-
way, 159 N. Y. 250; Johnson v. Langdon, 135 Cal. 624.    The Min-
nesota statute, even with the words "all proper purposes" in it, leaves
nothing to the discretion of the court.    The construction that the
courts have put upon the words proper purpose, makes the right
mandatory.    The only express limitation is that the right shall be
exercised at reasonable and proper times.    The implied limitation is
that it shall not be exercised from idle curiosity, or for improper or

unlawful purposes. In all other respects the statutory right is absolute. Foster v. White, 86 Ala. 467. Ellsworth v. Dorwart, 95 Iowa, 108. To determine the present value of his holdings and to guide his future actions in reference to the stock of the company is a sufficient reason for a stockholder's request to examine the books of the company. State v. New Orleans, 49 La. An. 1556; Guthrie v. Harkness, 199 U. S. 148. Hostility to the management of the company or its managing officers is no reason for denying a stockholder the inspection of the books. In re O'Neill, 95 N. Y. Supp. 974; Johnson v. Langdon, supra. It has even been held that, where the stock was bought for the very purpose of bringing an action, the stockholder was entitled to inspect the books, even though he was but a "dummy" for some third person. Mutter v. Eastern, 38 L. R. Ch. Div. 92. It is immaterial how much stock is held by the stockholder seeking to inspect the books, for the smallest stockholder has the same right of inspection as the largest. In re Steinway, supra; Johnson v. Langdon, supra; Foster v. White, supra.

LEWIS, J.

The relator, a stockholder in appellant company, claiming to have been refused the privilege of examining the books of the corporation, petitioned the district court for a peremptory writ of mandamus to enforce his demand. The answer to the petition and alternative writ alleged that the information desired was not for any proper use of relator as a stockholder; that the relator and one of his attorneys, Mr. Albin, had entered into a conspiracy to injure appellant corporation, and desired the information for the purpose of harassing and annoying appellant, and to aid its competitor in business.

A large amount of evidence was taken with reference to the history of the corporation and the relations of the various parties. The court found that the capital stock of the company was $100,000, divided into one thousand shares, of $100 each; that the relator was the owner of at least five shares; that appellant F. J. Haynes was president, and owner of a majority of the stock, and that C. M. Bend was secretary and treasurer of the company; that Martin H. Albin

became connected with the corporation in 1900, and continued a director and manager until 1905, and at the time these proceedings were commenced was not a stockholder, had no financial interest in the company, and the court found: "During a period said Martin H. Albin was an officer and stockholder in said company. His management of its affairs and business policies were not satisfactory to the majority interest in the corporation, who removed him December 13, 1905, and he ceased to be manager or a member of the board of directors on December 31, 1905, and at this time has no financial interest in defendant company. Since said date there has been open hostility between said Albin and said company, resulting in charges, countercharges, acrimonious disputes and harassing litigation between said Albin and said company."

The court further found that on March 23, 1908, Mr. Albin, and John M. Bradford, an attorney of St. Paul, representing relator, made demand on the secretary and treasurer for an inspection of the records and books of the company; that the demand was refused, and the parties referred to the attorney and the president, and that thereafter Mr. Hickey, the attorney of the company, and the president, informed Mr. Bradford that the demand had been referred to Mr. Hickey as the attorney; that on the second day of April, 1908, the relator retained Edward B. Graves, an attorney of St. Paul, to examine the books in his behalf; and that on that day a letter was addressed to the corporation and its president and secretary, demanding that said Albin and Graves, as representatives of relator, be permitted to examine the records and books of the corporation. This demand was also made on the president and was refused.

As a conclusion of law the court found: "That petitioner is entitled to a peremptory writ of mandamus which shall provide that he, or such attorney or agent as he may select, other than Martin H. Albin, shall be allowed to inspect the books, records, and papers of the defendant the Monida & Yellowstone Stage Company, including the books in which are kept the minutes of the meetings of the stockholders and of the directors, and the books in which are kept the records of the stock issued and outstanding, and all books of account

and all other papers of the company, save those which have to do with the so-called party and tourist business, and that he or they be given at all reasonable times access to such books, records, and papers, for the purpose of making such examination from day to day, during business hours, until such examination shall have been completed, and that in the course of such inspection petitioner may be accompanied by and have the assistance of a stenographer and clerk other than said Martin H. Albin, for the purpose of making such abstracts and copies from said books, records and papers as said petitioner may deem necessary. Such examination to be conducted with all reasonable dispatch consistent with the proper management and conduct of the affairs of said defendant, and shall not be unduly prolonged or vexatiously delayed. Let judgment be entered accordingly."

Appellants seek to reverse the order of the trial court upon three principal grounds: (1) That a proper demand by the relator for an opportunity to inspect the books was not made at the proper place, viz., at the office of the corporation. (2) That if a proper demand was made by the relator, or his attorneys, there was no refusal to comply with it in so far as the relator was personally concerned. (3) That in any event the information was desired for the use and benefit of relator's attorney, Martin H. Albin, with the intention of using it for an ulterior purpose, to the detriment of the corporation.

1. The offices of the corporation were located in the National German American Bank Building, in the city of St. Paul, and this was known to the relator and his attorney. The first demand, in March, 1908, for an inspection of the books, was made upon Mr. Bend, the secretary and treasurer, but not at the office of the corporation. The second demand was made personally upon the president, the secretary, and Mr. Hickey, the attorney, in the city of St. Paul, but not at the offices of the company. According to the evidence, the books and papers of the corporation were kept in a private safe of the president, at his private office on the corner of Selby and Virginia avenues. It is evident that both of the officers and the attorney, Mr. Hickey, were fully informed as to the purpose of the demand, and that it

was not refused for the reason that it was not made at a proper time or at the proper place, and the objection is not well taken.

2. We find evidence in the record tending to show that the refusal was not absolute and unqualified at the time the first demand was made in March by Mr. Bradford and Mr. Albin. The refusal was coupled with the statement that so far as the relator personally, or his attorneys, Messrs. Bradford and Morphy, were concerned, they were at liberty to examine the books and secure whatever information they desired, with the understanding, however, that such information should not be furnished to Mr. Albin. With reference to this first demand, the findings merely state that the matter was referred to Attorney Hickey, and the court did not otherwise specify that the request was denied.

Messrs. Bradford and Morphy appear to have then retired from the case, and on April 2 Mr. Graves and Mr. Albin appeared as attorneys for the relator, and renewed the demand in the form of a letter, addressed to the two officers and to the corporation, and personal demand was also made on the two officers. The evidence with reference to this demand is very indefinite. From a reading of the record we are impressed with the idea that relator's attorneys understood that the information was withheld, for the reason that in the opinion of the officers of the company it was desired for the purpose of turning it over to Mr. Albin for his own personal use. But, although the court would have been warranted in finding that there had been no absolute refusal to the relator of an inspection of the books, and the order allowing the writ might have been refused upon that ground, the court was of opinion that the relator and his attorneys were justified, by the conduct of the officers and their attorney, in assuming that the refusal was intended to be absolute, and found accordingly. There is evidence reasonably tending to support the views of the court, and the finding must stand.

3. It is apparent that on account of Mr. Albin's previous conduct, and his controversies and litigation with the corporation during the years of 1906 and 1907, the officers were justified in refusing access

to their books by Mr. Albin personally and as the attorney of relator.[1] The trial court recognized the justice of this position and attempted to guard against it in the order for the writ. But, so far as the relator personally is concerned, he stands upon a different ground. He claims to have had a valid claim against the company for the value of a large block of stock, of which he had been deprived, and the evidence justified the trial court in concluding that the information was desired by him for the bona fide purpose of properly prosecuting his claim against the company.

It remains to be considered whether under these circumstances the relator was entitled to the aid of the writ of mandamus.

The common-law right of a stockholder of a corporation to examine its books and accounts is not an absolute right, and will not be enforced by a writ of mandamus when the object is curiosity, speculation, or vexation. Varney v. Baker, 194 Mass. 239, 80 N. E. 524. And the writ of mandamus to enforce the right may issue, in the sound discretion of the court, with suitable safeguards to protect the interests of all concerned. In re Steinway, 159 N. Y. 250, 53 N. E. 1103, 45 L. R. A. 461. In some jurisdictions it has been held that it must appear upon the face of the petition for the writ that the application is sought in good faith and for a specific purpose. Garcin v. Trenton (N. J. L.) 60 Atl. 1098; Bruning v. Hoboken, 67 N. J. L. 119, 50 Atl. 906. The writ will be refused when the applicant shows by his own testimony a lack of good faith. Bevier v. U. S. (N. J. L.) 69 Atl. 1008. In the case of People v. Keeseville, 106 App. Div. 349, 94 N. Y. Supp. 555, attention is called to the difference between the right of a stockholder to examine the books of a corporation under the common law and the absolute right guaranteed by statute. With reference to the former it was held that, with respect to the general business books of a corporation, an inspection by a stockholder will not be ordered by a court unless the applicant seeks to learn something which he has the right to know for his protection, and his application is made in good

[1]See opinion on page 203, infra.

faith and not for the purpose of injuring or annoying the corpora-
tion. Whether the request should have been complied with on de-
mand rests in the sound discretion of the court.

But where the statute is mandatory, and gives a stockholder the
absolute right to examine the stock books of the corporation, then it
is immaterial whether the application be made in good faith, or for
what purpose the information is desired. Such statutes have general-
ly been strictly construed. Johnson v. Langdon, 135 Cal. 624, 67
Pac. 1050, 87 Am. St. 156; Ellsworth v. Dorwart, 95 Iowa, 108, 63;
N. W. 588, 58 Am. St. 427; Cincinnati v. Hoffmeister, 62 Oh. St.
189, 56 N. E. 1033, 48 L. R. A. 732, 78 Am. St. 707. But in Illi-
nois a statute conferring the right of inspection, without qualifica-
tion, except as to time, was held subject to the implied limitation that
it should not be exercised from idle curiosity, or for unlawful pur-
poses. Stone v. Kellogg, 165 Ill. 192, 46 N. E. 222, 56 Am. St.
240. In Guthrie v. Harkness, 199 U. S. 148, 26 Sup. Ct. 4, 50 L.
Ed. 130, the federal supreme court adopted the rule, as stated by
Morawetz on Corporations, § 473, that the decisive weight of Ameri-
can authorities recognize the common-law right of the shareholder
for proper purposes and under reasonable regulations to inspect the
books of the corporation of which he is a member. Instructive notes
will be found on this subject in connection with the reports of Weihen-
mayer v. Bitner (88 Md. 325) 45 L. R. A. 446, and Kuhbach v.
Irving (220 Pa. St. 427) 20 L. R. A. (N. S.) 185; also 5 Current
Law, 834.

A brief reference to the Minnesota statutes will be sufficient to
disclose the proper principles which should govern the courts of this
state in the use of the writ of mandamus to enforce the right of in-
spection of the books of a corporation by a stockholder. Section 2800,
G. S. 1894, provided that the books and records of a corporation
should at all times be open to the inspection of any and all stock-
holders. This section was carried forward from the Statutes of 1866,
and we are not aware that it has ever been under consideration by the
courts of this state. Whether it was any more than declaratory of
the common law is not now of importance, since it was superseded
by section 2869, R. L. 1905, which reads:

"All such books and records shall at all reasonable times and for all proper purposes be open to the inspection of every stockholder."

The writers of the Code probably recognized that there was some uncertainty as to the meaning of the statute of 1894, that the courts of the several states were not unanimous in the construction of similar statutory provisions, and took occasion to rewrite the section, and to specify that the time should be reasonable and that the purpose of inspection should be proper. The right of inspection is not an absolute one, and may be refused when the information is not sought in good faith, or is to be used to the detriment of the corporation. But in this instance the petitioner showed that he was a stockholder, and was unable to secure information as to the financial standing of the company and method of conducting the business. This was sufficient to make a prima facie case of good faith.

The order appealed from enables the relator, or any agent of his other than Mr. Albin, to have access to the books, but no provision was made to prevent the information from being communicated to Mr. Albin. Although the language of the order is somewhat indefinite, it should not be assumed that it was the intention of the court to authorize the representative, or agent, who should be selected by the relator, to furnish the information to Mr. Albin. The court restricted the examination so as not to include such books, papers, and record as pertained to the so-called "party and tourist business," and also denied the right of Mr. Albin to examine the books as the attorney of relator.[1] This seems to imply that Mr. Albin was not to be given the information sought, and we are not warranted in assuming that the court did not intend to restrict the examination to the legitimate purposes of the relator in prosecuting his personal claim against the corporation. No request was made to modify the order, and if it is liable to be misunderstood, and the rights of appellants are not clearly defined, the remedy lies with the trial court.

It is therefore ordered that the order appealed from be affirmed,

[1]See opinion on page 203, infra.

without prejudice to appellants to move for a modification of the order not inconsistent with the views herein expressed.[1]

On April 8, 1910, the following opinion was filed:

PER CURIAM.

Upon the previous hearing we understood the order appealed from to imply that the information was to be withheld from Mr. Albin, and some expressions in the opinion seem to indicate that it was intended to hold that the facts justified such conclusion.   To remove any doubt as to the effect of the decision, we take this occasion to state that we express no opinion as to whether the facts disclosed would justify the trial court in directing the examination to be made on the condition that the information be not furnished to Mr. Albin; that it was not intended to direct a modification of the order to that effect, or to reflect upon his professional conduct; that it was not intended to direct the trial court to limit the examination of the books to the preparation of relator's case against the company; but it was and is the intention to leave the entire matter of the scope and purpose of the examination to the trial court, and to make such modifications, if any, as may be deemed advisable.

It is therefore ordered that the application for reargument be denied, and that the former order of this court be modified to read as follows:  "The order appealed from is affirmed, without prejudice to either party to move, if so advised, for any modification of the order of the trial court which may seem to it advisable."

JAGGARD, J., took no part.

[1]For modification of order, see following opinion.