## STATE EX REL. WILLIAM H. BOLDT v. ST. CLOUD MILK PRODUCERS' ASSOCIATION AND OTHERS.[1]

May 21, 1937.

No. 30,923.

[1]Reported in 273 N. W. 603.

2

Charles H. Richter, for appellants (respondents below).
W. H. Stewart, for respondent (relator below).

PETERSON, JUSTICE.

In this opinion the parties will be designated as they were in the court below. Petitioner is an incorporator and member of respondent association, a corporation organized under the coöperative marketing act (L. 1923, c. 264, 1 Mason Minn. St. 1927, §§ 6079 to 6113-1) as a nonprofit, nonstock, and coöperative corporation. The principal business of the corporation is the marketing, processing, and warehousing of milk, cream, and other dairy products. The capital was contributed by the members by payment of two per cent of the value of the milk products which they sold to dealers in St. Cloud, Minnesota. It is admitted that petitioner contributed more than $54.75 and that he made other contributions, the exact amount of which is unknown to him. Respondent was organized on October 24, 1933. At the time of its organization the association did not own a plant for the collection and collective sale of the products of its members, as was contemplated by the scheme of its organization. In lieu of handling the products itself, it authorized its members, although they were bound to sell their products to the association only, to sell their products to other dairy companies in the city of St. Cloud. This they did for some considerable time. In February, 1935, the members of the association met and it was decided to establish a milk plant in the city of St. Cloud. Peti-

tioner claims that the action taken at the meeting was illegal and without a vote of the members. It is claimed that the meeting was dominated and run by the individual respondents and a small group of members who sided with them. In August, 1935, respondent association established a plant in St. Cloud and notified its members to commence selling their dairy products to the respondent association pursuant to their contracts, beginning August 12, 1935. Petitioner did not comply with the terms of the notice, and on August 27, 1935, the association attempted to expel him.

Thereafter petitioner demanded of the respondents permission to examine the books and records of the association, which demand was refused. Thereupon he brought the present proceeding in *mandamus* to compel the respondents to permit him to examine the books and records of the association. He alleges that the purposes of the examination are: To determine the legality of the purported expulsion of himself and the other 49 members from the association by those now in control of it; to investigate the conduct and management of the association and its property, assets, and affairs; to ascertain whether or not the property rights in said association of petitioner and other members who are alleged to have been expelled have been respected and preserved; and to make such further investigation of the affairs, business, and property of the association as may be necessary or expedient to determine the condition of its business. Petitioner claims that unless some action is taken the management and conduct of the affairs of the association will result in an entire loss of its property, including the investment which the petitioner and the 49 other expelled stockholders have therein. He alleges further that this proceeding is instituted by him in good faith for his own interest as well as for the interests of those similarly situated. The respondents admit that they refused to permit petitioner an examination of the books and records of the association and justify it upon the grounds that petitioner was not a member of the association at the time of the requested inspection; that the proceeding is brought in bad faith to aid a rival group of competing milk and creamery interests in St. Cloud to destroy the business of respondent association; that it is brought for improper

4

purposes in that the information to be obtained is not for the use of the petitioner as a stockholder or for the interest of the corporation, but solely to obtain information relative to the membership and business affairs of the respondent association, and that a member of a coöperative has no right of inspection of the corporate books and records.

■ The court below made an order granting petitioner a peremptory writ of *mandamus*. Petitioner contends that this order is not appealable. The claim is that the appeal is from an order for judgment, which is not appealable. The order concludes with the words: "Let a peremptory writ issue accordingly." This is not an order for judgment. It is an irregular judgment. The correct practice is to make findings of fact and conclusions of law and enter a formal judgment as in ordinary civil actions. Directing the writ to issue without findings of fact and conclusions of law and the entry of judgment has been criticized by this court, but our holdings have sustained such a practice. In State ex rel. Bd. of Co. Commrs. of Jackson County v. McKellar, 92 Minn. 242, 244, 99 N. W. 807, 808, this court said that "an order directing that a peremptory writ of *mandamus* issue was a judgment, though an irregular one; hence it was appealable as a judgment." To the same effect see State ex rel. Mortensen v. Copeland, 74 Minn. 371, 77 N. W. 221; 4 Dunnell, Minn. Dig. (2 ed.) §§ 5778, 5781 (note 41). The appeal is from a judgment and not from an order for judgment. Therefore the appeal will lie.

■ The respondents contend that they were denied a trial the same as is had in an ordinary civil action, to which they are entitled by 2 Mason Minn. St. 1927, § 9729. It appears that a demurrer was interposed and the parties submitted affidavits on the issue of petitioner's good faith and motives in seeking the writ. The record does not affirmatively show that the parties waived a trial and the taking of oral testimony. It does show, however, that the court overruled the demurrer, and the judgment for the writ recites that the matter came on for hearing upon the pleadings, writ, orders, affidavits, and all records and files in the case. The inference is inescapable that the parties submitted the cause upon affi-

davits as recited by the court below. The affidavits stand upon the same footing as documentary evidence, and if the parties elect to submit their case upon such evidence they waive their right to object to the mode of proceeding which they themselves have adopted. Cases involving the sufficiency of documentary evidence to sustain findings of the court are discussed in 1 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 411, note 13. Having elected to submit their case on affidavits, the respondents cannot now complain.

■ The next claim is that the stockholders or members, as the case may be, of a coöperative do not have a right to inspect the books and records upon the grounds that by statute the right of inspection is confined to ordinary stock corporations, and that the purposes and characteristics of a coöperative are such as to exclude the idea of inspection of the books and records by the members or stockholders. In respect to the first ground, it is claimed that the statute, 2 Mason Minn. St. 1927, § 7470, by its terms provides for a right of inspection only in case of stock corporations and that such right of inspection is exclusive. An examination of the statute discloses that the right of inspection provided therein is incidental only to its other purposes. The statute provides primarily for keeping records pertaining to stock transactions and other books of account and the declaration of dividends on stock. It provides for a right of inspection of the records and books required to be kept. It also contains new and statutory rights of stockholders to receive copies and reports. It says that the "directors shall, when required, present to the stockholders written reports of its condition and business, * * *." It is quite obvious that by providing that the stockholder shall have a right of inspection of the records and books so required to be kept it was not intended to take away any rights which he might have had in the absence of a statute.

The statute by its terms applies only to stock corporations. Gunther v. Bullis, 173 Minn. 198, 217 N. W. 119. But it does not follow that because the statute by its terms applies only to stock corporations a right of inspection does not exist in the case of other corporations. It is a general rule of the construction of statutes

that they are presumed not to make any alteration in the common law further or otherwise than they expressly declare, and that existing common-law remedies are not to be taken away by a statute unless by express enactment or necessary implication. 6 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 8958. At the time of the enactment of § 7470 the common-law rule that stockholders and members of a corporation have a right to inspect the books and papers of the corporation for proper purposes and under reasonable circumstances prevailed. This right of inspection was recognized by the courts of King's Bench and Chancery from an early date and was enforced by motion or *mandamus*. The common-law right of inspection is part of the common law and has been enforced by all the courts in this country. Matter of Steinway, 159 N. Y. 250, 53 N. E. 1103, 1107, 45 L. R. A. 461. In State ex rel. Humphrey v. Monida & Y. Stage Co. 110 Minn. 193, 124 N. W. 971, 125 N. W. 676, it was held that it was unnecessary to decide whether our statute is only declaratory of the common law so far as relates to stock corporations. The statute as originally enacted granted the right of inspection without qualification. Later it was amended to provide that the inspection shall be at reasonable times and for proper purposes. The purpose of the amendment evidently was to make the statutory right of inspection, as far as it goes, conform to the common-law rule. The statute does not contain any clause repealing, restricting, or abridging the rule then in effect. Such statutes are universally held not to abridge, restrict, or repeal, but to enlarge, extend, and supplement, the common-law rule. 6 Thompson, Corporations (3 ed.) §§ 4525, 4526 (note 23); notes, 22 A. L. R. 35, 83; 80 A. L. R. 1506. In 7 R. C. L. p. 322, § 298, the rule is thus stated: "It is sometimes said of these statutes that they are merely declaratory of the common law. It is generally conceded, however, that they materially enlarge and extend the common law rule, and do not simply affirm it." In Matter of Steinway, 159 N. Y. 250, 264, in speaking of the effect of a New York statute similar to ours, the court said: "We do not think that the statute now in force is exclusive, or that it has abridged the common-law right of stockholders with reference to the examination of corporate books."

The conclusion is inescapable that the common-law right of inspection continues to exist, enlarged, extended, and supplemented by the provisions of § 7470, in the cases to which it applies. We have not overlooked the Minnesota business corporation act, L. 1933, c. 300, §§ 34 and 62, 3 Mason Minn. St. 1936 Supp. §§ 7492-34, 7492-62, which obviously does not apply.

With respect to the proposition that the purposes and characteristics of a coöperative are such as to exclude the idea of an inspection of the books and records by the members and stockholders, it is pointed out that coöperatives are incorporated to make a profit for the members as distinguished from the corporation, and that the respondent association is a nonstock corporation. It is claimed also that inasmuch as coöperatives are required to file reports with the public examiner the information contained in such reports is a substitute for any inspection. The coöperative marketing act itself seems to negative the general proposition that the purposes and characteristics of a coöperative are such as to exempt them from the right of inspection. The statute provides for coöperatives of two classes, those with and those without capital stock. 1 Mason Minn. St. 1927, § 6081, and other sections of the coöperative marketing act. It is apparent that the argument is too broad. By providing that there may be coöperatives with stock, the coöperative marketing act clearly made § 7470 applicable to those coöperatives which have capital stock. This conclusion is necessary because of the express terms of § 7470. That statute·by its terms applies to all stock corporations and is broad enough to include coöperatives with capital stock. By making the coöperatives with stock subject to the statutory right of inspection, the legislature clearly indicated that the purposes and characteristics of a coöperative are not such as to exempt all coöperatives from such right of inspection.

The same reasons obtain for permitting the right of inspection of the books and records of a coöperative as in the case of an ordinary business corporation with capital stock. The basis upon which the right of inspection rests is that the members of a corporation are in fact the real owners of the books and the property of the corporation, and those in charge of the corporation are

8

merely the agents of the true owners. In Guthrie v. Harkness, 199 U. S. 148, at 155, 26 S. Ct. 4, 6, 50 L. ed. 130, 4 Ann. Cas. 433, the court very aptly says: "The right of inspection rests upon the proposition that those in charge of the corporation are merely the agents of the stockholders who are the real owners of the property." To same effect, 7 R. C. L. p. 323, § 299; 6 Thompson, Corporations (3 ed.) § 4525, p. 411; notes, 22 A. L. R. 57; 80 A. L. R. 1509. It is apparent that the members of a nonstock coöperative stand in substantially the same relation to the corporation as do the members of a coöperative with capital stock or other business corporation with capital stock. The members of such a coöperative contribute capital, as was done in the case of respondent association, for carrying on the corporate business. The corporation is organized to transact business the same as a business corporation, and the members are entitled to the profits and benefits derived from the corporate activities. The coöperative marketing act speaks of nonstock coöperatives as being composed of "members" and recognizes their property rights and interests. By statute and the articles of incorporation, the members of respondent association have the right to vote and other rights analogous to those of any stockholder. In Nebraska Wheat Growers Assn. v. Smith, 115 Neb. 177, 212 N. W. 39, 44, in speaking of this matter, the court, at page 190, said:

"In a stock corporation, membership is created and the corporation sustained by the purchase or ownership of stock which evidence the right the owner has in the management, profit, and ultimate assets of the corporation, and from the proceeds of which, received by the corporation, its business may be transacted. In a nonstock corporation, the right which a member has in its management, profit, and ultimate assets is evidenced ordinarily by its contract of membership. But both stock and nonstock forms of corporation activity are created on the foundation of a contribution of money or property by its membership to be used by and through these 'artificial persons' in the transaction of business for which they are organized for common profit by and of the owners thereof."

It would seem that if stockholders and members of a corporation are entitled to an inspection of its books because of the fact of ownership, the reason obtains in full force in the case of coöperatives, whether they be organized with or without capital stock.

No distinction has been observed between stockholders and members of a corporation. The right of inspection has been stated in the books to be that of a "stockholder or member." 38 C. J. p. 794, § 452. Sometimes it is said that the *members* of a corporation have a right to inspect its books and records. 18 R. C. L. p. 178, § 99. In some of the English cases by Lord Kenyon and other judges, reviewed at pages 258-259 of the opinion in Matter of Steinway, 159 N. Y. 250, the right is spoken of as the right of *members* of a corporation. Rex v. Fraternity of Hostmen, 2 Str. 1223, and The King v. Babb, 3 D. & E. 579, are illustrative. The real test is not whether the interest of the member is evidenced by a certificate of stock or of membership, but whether he has an interest in the corporation and a voice in its management which the law protects and the enforcement of which will be aided by an inspection of the books, records, and papers of the corporation. If such an interest appears, the right of inspection is granted to members of a non-stock corporation. McClintock v. Young Republicans of Philadelphia, 210 Pa. 115, 59 A. 691, 68 L. R. A. 459, 105 A. S. R. 784; State ex rel. Haeusler v. German Mut. L. Ins. Co. 169 Mo. App. 354, 362, 152 S. W. 618, 619. In the last cited case it was held that a policyholder in a mutual insurance company who has the status of a member, with a right to vote, "occupies a position similar to that of a stockholder in a private corporation, for the policyholder, like the stockholder, is a member of the corporation and has a voice in the election of its directors."

The members of a coöperative, whether it be stock or nonstock, are entitled in all proper cases to an inspection of the books, records, and papers of the corporation.

The right of inspection should not be denied because coöperatives are required to file annual reports with the public examiner by the provisions of 1 Mason Minn. St. 1927, § 6098. Such reports are not a substitute for inspection of books, records, and papers. The fact

that a corporation is required to file reports or is subject to the visitorial powers of government is no reason for denying the right of inspection of corporate books to one who is entitled thereto. Guthrie v. Harkness, 199 U. S. 148, 26 S. Ct. 4, 50 L. ed. 130, 4 Ann. Cas. 433; Winter v. Baldwin, 89 Ala. 483, 7 So. 734; Tuttle v. Iron Nat. Bank, 170 N. Y. 9, 62 N. E. 761 (national banks); Wilson v. Mackinaw State Bank, 217 Ill. App. 494 (state banks). The cases are collected in the notes in 22 A. L. R. 35; 43 A. L. R. 783; 80 A. L. R. 1502. The rules laid down in these cases dispose of this contention.

■ The respondents contend that the petitioner is not entitled to the writ because he is not a member of the association, having been expelled therefrom by the action of its board of directors in August, 1935. Neither the statute, the articles of incorporation, nor the by-laws of the association authorize the board of directors to exercise the power of expelling members. The statute authorizes the board of directors to adopt by-laws, subject to the approval of the members by a majority vote or by the written assent of such majority, providing for the automatic suspension of the rights of a member when he ceases to be eligible for membership in the association, and the mode, manner, and effect of the expulsion of a member. 1 Mason Minn. St. 1927, § 6087(i). The articles of incorporation are silent upon this matter. The association's by-laws provide that "a member may be expelled for any action which tends to violate agreements and regulations of the association or to injure the business of the association." This is the only provision relative to the expulsion of members. It does not provide by whom the power of expulsion shall be exercised. The power of expulsion of members is in the entire membership or all the stockholders of a corporation except in the cases in which it is delegated to the board of directors. Ordinarily, such delegation can be accomplished only by an express provision in the statute under which the corporation is organized or by the articles of incorporation. In the case of coöperatives our statute permits the delegation of the power to the board of directors by the adoption of a by-law expressly so providing, which shall state the mode, manner, and effect of the expulsion of a mem-

ber. But the respondent association has not complied with the statute, and therefore it has failed to delegate the power of expulsion to the board of directors. The reason given, stated in 6 Thompson, Corporations (3 ed.) § 4676, is that the ordinary office of the board of directors is to conduct the business of the corporation and not to determine matters touching its constituent character. The expulsion of members directly involves the constituent character of the corporation. There are many cases in which this rule has been applied. State ex rel. Graham v. Chamber of Commerce, 20 Wis. 63, 68; Weber v. Zimmerman, 22 Md. 156; Green v. African Methodist Episcopal Society, 1 Serg. & Raw. (Pa.) 254; Commonwealth v. Pennsylvania Beneficial Institution, 2 Serg. & Raw. (Pa.) 140, 141; Hassler v. Philadelphia Musical Assn. 14 Phila. (Pa.) 233. Inasmuch as the association's board of directors did not possess the power of expulsion, the attempt to expel the petitioner was void upon its face, and the court below was justified in so finding.

■ Respondents claim that petitioner is not seeking the writ in good faith and for proper purposes. The evidence clearly discloses facts which require findings of lack of good faith and improper motives. It appears that there is a combination or conspiracy of three dairy companies in St. Cloud and some of the expelled members of the respondent association to oppose the association and its business. There is keen competition between the dairies and the association. The association has invaded a business field heretofore preëmpted by the dairy companies. In opposing the respondent association, the dairies have attempted to ruin it and have canceled contracts entered into by them with the association whereby they agreed to handle the products of the members of the association. The breaches of contracts by the three dairies occurred at the same time and suggest concert of action. The expelled members of the respondent association are dissatisfied and have refused to abide by the action which the association has taken. The dairy companies and their representatives have united with the expelled members of the association for their common purposes. Contracts have been entered into between the dairies and some of the members whom they have induced to terminate their association member-

ships. By entering into contracts with the members of the association the dairy companies have interfered with the contractual relations existing between the association and its members, which constitute the basis upon which any coöperative depends for its success. The coöperative marketing act in effect provides that such agreements are the very foundation upon which a coöperative depends and, to enforce the contracts, gives to the coöperatives the right to proceed by injunction, specific performance, and to expel members. It further provides that anyone who knowingly induces or attempts to induce any member or stockholder of a coöperative to break his marketing contract with the association shall be guilty of a misdemeanor and shall be liable to the association aggrieved in a civil suit in the penal sum of $500 for each such offense. The petitioner, Boldt, is guilty of a breach of his contract with the association and the terms of his membership. He has refused to pay the two per cent on all sales made by him between April 16 and August 12 pursuant to the terms of the agreement and thereafter has sold his products to the St. Cloud Dairy Company in violation of the terms of said agreement. By reason of his business relations with the St. Cloud Dairy he has rendered himself liable to expulsion from the respondent association. The dairy companies have been interested in promoting, and have done many acts for the institution of, this lawsuit. Through the dairy companies, petitions have been circulated among the expelled members to raise funds to finance the lawsuit. The dairy companies themselves have made contributions to the petitioner for the purpose of financing this lawsuit, and it is admitted that the Purity Dairy contributed $50 in cash, the Quality Dairy $75 in cash, and the St. Cloud Dairy $50 in cash. It is stated that the lawsuit will cost $600. The petitioner attempts to explain the contributions made by the dairy companies as advancements due to the expelled members for products sold by them to said companies, but the fact remains that the explanation is entirely consistent with the idea of the dairy companies putting up the money to finance this lawsuit. The evidence discloses a different purpose in seeking this writ than that stated in the petition. The evidence discloses that petitioner states that the action

is brought for the benefit of himself and others similarly situated for the purpose only "to obtain better prices for their products." Just how he hopes to accomplish this purpose is not disclosed. This statement of the purpose is a marked departure from that stated in the alternative writ, and it is not apparent therefrom that the inspection will either aid in the protection of his property rights as a member or his rights of membership.

In State ex rel. Humphrey v. Monida & Y. Stage Co. 110 Minn. 193, 202, 124 N. W. 971, 974, 125 N. W. 676, this court stated: "The right of inspection is not an absolute one, and may be refused when the information is not sought in good faith, or is to be used to the detriment of the corporation." A *prima facie* case of good faith was made by the showing that petitioner was a stockholder or member and was unable to secure information as to the financial condition of the association and the facts relative to the conduct of its business. But the writ will be refused when the evidence shows a lack of good faith and the presence of improper motives. State ex rel. Humphrey v. Monida & Y. Stage Co. 110 Minn. 193, 124 N. W. 971, 125 N. W. 676. *Mandamus* is a legal remedy granted on equitable principles. State ex rel. Hathorn v. U. S. Express Co. 95 Minn. 442, 444-445, 104 N. W. 556.

The writ will not be denied merely because the petitioner is hostile to the respondent or because he is a member of a competing corporation. 18 R. C. L. p. 181, § 102. The writ is issued only to protect some right of the petitioner, either as a stockholder or member of the corporation as such or some right of the corporation in which he is interested as such stockholder or member. The relief sought must be germane to his rights as a stockholder or member. If it is foreign thereto the writ will be denied even though he otherwise might be entitled to it. Accordingly, it has been held that the writ will not be granted where it appears that the examination is desired for the purpose of obtaining information to be used in crippling the business of the corporation for the benefit of a business rival. State ex rel. Humphrey v. Monida & Y. Stage Co. 110 Minn. 193, 124 N. W. 971, 125 N. W. 676; 7 R. C. L. p. 326, § 303; 18 R. C. L. p. 181, § 102; notes, 10 Ann. Cas. 990; 20

L.R.A.(N.S.) 185; 22 A. L. R. 25; 43 A. L. R. 783; 59 A. L. R. 1376; 80 A. L. R. 1502. Nor will it be granted where the stockholder making the application is not seeking the information for his own purposes but for the benefit of others for whom he is acting. In short, he is not the real party in interest in a case of the kind mentioned and cannot use his rights as a stockholder or member to advance the interests and purposes of others who are not stockholders or members. Note, 10 Ann. Cas. 990. The facts stated clearly indicate that petitioner's membership has been a matter of no concern to him; that he has not used it; that he has not regarded it as a thing of value; and that he has failed to abide by the terms thereof. He alleges that his interest in it is a little over $54.75. Nevertheless, he brings this action, which it is admitted will cost him over $600, to vindicate rights which he apparently regarded as of no value until he joined forces with the dairy companies of St. Cloud, which are interested in ruining and destroying the association. The dairy companies are not shown to have any interest in the petitioner except as they may be able to use him to advance their purposes. There is no reason disclosed why they should solicit funds to finance this lawsuit and themselves contribute the amounts stated; they are not shown to have any interest in this lawsuit except to harass the respondent and, if possible, transfer the control of it to the so-called expelled members and, if possible, destroy the respondent as a competitor. The inference is inescapable that the lawsuit is brought for the benefit of the dairy companies and not for the benefit of the petitioner. *Mandamus* should therefore be denied. State ex rel. Humphrey v. Monida & Y. Stage Co. 110 Minn. 193, 124 N. W. 971, 125 N. W. 676. The cases on this point are collected in notes: 10 Ann. Cas. 990; 22 A. L. R. 25, at pp. 62, 74-75; 43 A. L. R. 783, at 784; 59 A. L. R. 1376; 80 A. L. R. 1502, 1514. Among the cases cited denying the writ are: In re Coats, 73 App. Div. 178, 76 N. Y. S. 730 (petitioner a dummy for parties seeking to get control of corporation and closely connected with them in such scheme); Bevier v. U. S. Wood Preserving Co. (N. J. Sup.) 69 A. 1008 (petitioner aiding a competitor—therefore not acting in good faith); In re De Vengoechea, 86 N. J. L. 35,

91 A. 314 (petitioner acting in concert with a competitor seeking to injure and annoy the corporation) ; In re Kennedy, 75 App. Div. 188, 77 N. Y. S. 714 (evidence showing ill will toward the corporation and a desire to injure its business and build up a new and rival business) ; Lien v. Savings L. & T. Co. 43 N. D. 260, 174 N. W. 621 (stockholders seeking information which would be of value to rival corporation). Many other similar cases are cited in the notes. They are too numerous to refer to all of them.

To protect against any abuse that might result from an inspection, the court below admonished and restrained the petitioner or his agents from imparting any information acquired thereby "to any competitor in business" or "to any other person or persons who might use such information to the detriment of the respondent corporation." This is a salutary condition to be imposed in all cases, but it does not justify the issuance of the writ in cases in which it appears that the writ is sought for improper purposes and not in good faith. If petitioner is not entitled to the writ, protection of the corporation against abuse of the use of it does not furnish a substitute for the right or a justification for the granting of the writ.

Because the evidence in this case clearly shows bad faith and improper motives, there will have to be a new trial.

Reversed.

Stone, Justice (concurring in the result).

I agree that the irregular judgment in question is appealable. Because the petitioner, as stated in the last numbered subdivision of the opinion, "is not seeking the writ in good faith and for proper purposes," I concur in the result. That being enough to dispose of the case, I submit, with deference, that there is no occasion for discussing anything else. That is subject to this single exception. There was a trial on the merits. Hence, under the statute (2 Mason Minn. St. 1927, § 9311), there should have been findings of fact and conclusions of law "separately stated." Because of that omission, I would prefer to have the case remanded for the purpose of remedy-

ing that serious defect under the rule of Pioneer L. & L. Co. v. Bernard, 156 Minn. 422, 195 N. W. 140.

JULIUS J. OLSON, JUSTICE.

I concur in the views of Mr. Justice Stone.

