FRED SCHMIDT, J. E. Greenfield, and Samuel Crumpton v. J. M. ANDERSON, as President of Equity Co-Operative Exchange, and G. A. Thiel, as Secretary and Treasurer of Equity Co-Operative Exchange.

(150 N. W. 871.)

**Domestic corporations — records of — stockholders — inspection by — refusal — misdemeanor — statute — mandatory.**

1. Section 4560, Comp. Laws 1913, requires that all the records of a domestic corporation, together with its stock and transfer books, must be kept open to the inspection of any stockholder, member, or creditor; and § 10016 makes officers or agents of such corporations, who have in custody any such record, book, paper, or document, and who refuse to give a stockholder or member an opportunity, during office hours, to inspect the same, guilty of a misdemeanor. It is *held* that the terms of said provisions are mandatory, but that the courts will not lend their aid to parties seeking to perpetrate a crime, when it is clear that they are endeavoring to make use of the examination of corporate records to aid them in so doing.

**Stockholder — inspection of books and records — object of, immaterial — it is his right to do so.**

2. The fact that a stockholder desires to make use of the information which

---

Note.—While at common law the right of a stockholder to inspect the books of the corporation is not an absolute one, but depends upon his motive in seeking the inspection, the authorities are not agreed as to the effect of his motive when seeking to exercise a right of inspection conferred by statute. This is shown by a review of all the authorities, in notes in 45 L.R.A. 446; 20 L.R.A. (N.S.) 185; 30 L.R.A. (N.S.) 291; and 42 L.R.A. (N.S.) 332.

A stockholder's right to inspect the books of the company is also the subject of a note in 107 Am. St. Rep. 674.

he acquires from an inspection of the books and records of the corporation in which he holds stock, to aid a rival in business, or to aid him in litigation which he may desire to institute against the corporation, is no defense to his right under the statute.

**Common law — rule — abrogated by statute — examination of records by stockholder — motive.**

3. The statutes referred to were enacted in the light of and to abrogate the rule at common law, which permitted officers of the corporation to sit in judgment on the motives of the applicant for desiring to make an examination, and to protect minority stockholders and prevent the delays incident to determining, through legal proceedings, the motives of those desiring to examine corporate records; and it is not for the courts to read into a plain statute qualifications which would destroy its effect.

**Mandamus — application for — evidence conflicting — rule — findings — verdict of jury — supreme court — practice.**

4. On an application for mandamus, where the evidence is conflicting, the same rule applies to the findings of the court as is applicable to the verdict of a jury. It is not for the supreme court to determine in whose favor the evidence preponderates, but whether there is substantial competent evidence to sustain the findings.

**Examination of records — lawful purpose — evidence.**

5. The trial court found that the plaintiffs sought the examination of the books of the corporation, of which the defendants are president and secretary, for lawful and proper purposes, and at a proper time. *Held* that the record discloses ample evidence to sustain such finding of the trial court.

Opinion filed January 9, 1915. On petition for rehearing January 30, 1915.

Appeal from the District Court of Cass County; *Honorable C. A. Pollock.*

Affirmed.

*Robinson & Lemke, M. D. Munn, Benjamin Drake,* and *W. H. Stutsman,* for appellants.

*J. M. Witherow* and *Engerud, Holt, & Frame,* for respondents.

SPALDING, Ch. J. The defendants in this case are president and secretary-treasurer of the Equity Co-operative Exchange, a domestic corporation organized to handle and deal in grain and farm products for profit, and having a paid-up capital cash stock of $23,675, and

$13,300 paid by notes. Each of the plaintiffs is a stockholder in said corporation. As between the plaintiffs, Greenfield and Crumpton, and the defendants, there exists a controversy as to the amount of indebtedness owed by the Equity Exchange to said plaintiffs. All three plaintiffs, by their separate attorneys, made application for leave to inspect the books of the exchange. When such inspection was in progress, the defendants refused to permit plaintiffs to complete it, whereupon this proceeding was instituted in the district court of Cass county to compel the defendants to permit plaintiffs to complete their examination of the books of the corporation.

Detailed reference need not be made to the very lengthy pleadings. The taking of testimony consumed several days, and the typewritten record of testimony covers 394 pages. In addition to this, the exhibits cover many additional pages of closely printed matter. The plaintiffs seem to have proceeded in the introduction of testimony on the theory that they would ascertain in the proceeding, if by no other means, the financial condition of the exchange and its methods of doing business. The defendants introduced hundreds of pages of evidence in an attempt to show what had been said at congressional and legislative investigations, at farmers' meetings, and in other places; some of it, if competent, having a tendency to show that the Chamber of Commerce of Minneapolis, and its members, were not altogether fair in their dealings with customers; the whole record showing conclusively that strong rivalry or competition exists between the exchange and said Chamber of Commerce, and that the exchange was trying to instruct the farmers that it was to their interest to ship their grain to it.

The defendants pleaded that said Chamber of Commerce was engaged in an unlawful conspiracy with the Chamber of Commerce of Chicago and the Board of Trade of Duluth to maintain a monopoly in the grain trade, and offered testimony to show that an inspection of the books might be used to aid the Minneapolis Chamber in its competition with the exchange. The statute of this state regarding the right of a stockholder to inspect and examine the records and books of the corporation in which he holds stock is found in § 4560, Comp. Laws 1913, and reads as follows: ". . . All such records shall be open to the inspection of any director, member, or stockholder or creditor of the corporation. . . . Such stock and transfer book must be kept open

to the inspection of any stockholder, member or creditor. . . ." § 10016, Comp. Laws 1913, provides: "Every officer or agent of any corporation having or keeping an office within this state, who has in his custody or control any book, paper, or document of such corporation, and who refuses to give to a stockholder or member of such corporation, lawfully demanding, during office hours, to inspect or take a copy of the same or any part thereof, a reasonable opportunity so to do, is guilty of a misdemeanor." As we construe the briefs and arguments of counsel, there is little, if any, controversy as to the meaning of § 4560, supra, except that appellants insist that it should be construed only as a declaration of the common law, and that the object and motive of the stockholder, who desires to make the inspection, may be inquired into, whereas the respondents contend that it does not admit of such inquiry. We are satisfied that, under the great weight of authority, it is mandatory. However, we may add that courts will not lend their aid to parties seeking to perpetrate a crime, when it is clear that they are endeavoring to make use of the examination to aid them in so doing. Many authorities are cited by counsel, both with reference to the common-law rule and the rule laid down by the different courts, under statutes like or similar to the foregoing provisions of our own. Where the terms of the statute are mandatory, like ours, it is immaterial that the stockholder desires to inspect the books in the interest of a rival corporation, or to aid him in securing business which otherwise might go to the corporation whose books he seeks to inspect, or to get information on which to predicate litigation which he may desire to institute against the company. Kimball v. Dern, 39 Utah, 181, 35 L.R.A. (N.S.) 134, 116 Pac. 28, Ann. Cas. 1913E, 166, is a case in which the facts were almost identical with the facts in the case at bar, and the supreme court of Utah, in a well-considered opinion, sustains the right of the stockholder to examine the books, and holds that his object does not forfeit his statutory right. Weihenmayer v. Bitner, 88 Md. 325, 45 L.R.A. 456, 42 Atl. 245, is another case where the stockholder desired to inspect the books for the purpose of getting information to be used in the interest of a rival corporation and to the injury and loss of the corporation whose books he sought to examine, and it was held that he had a right to make the examination. See also Re Steinway, 159 N. Y. 250, 45 L.R.A. 461, 53 N. E. 1103, where in such a case it is

held that, when an absolute right is conferred by statute, nothing is left to the discretion of the court. Mutter v. Eastern & M. R. Co. L. R. 38 Ch. Div. 92, 57 L. J. Ch. N. S. 615, 59 L. T. N. S. 117, 36 Week. Rep. 401, is a case where the applicant acquired the legal title of the stock for the sole purpose of enabling him to inspect the records for the benefit of a rival concern, yet mandamus was granted by the trial court and affirmed on appeal, on the ground that it was an absolute statutory right. See Cincinnati Volksblatt Co. v. Hoffmeister, 62 Ohio St. 189, 48 L.R.A. 732, 78 Am. St. Rep. 707, 56 N. E. 1033. Also see authorities cited in Kimball v. Dern, supra; Johnson v. Langdon, 135 Cal. 624, 87 Am. St. Rep. 156, 67 Pac. 1050; Hobbs v. Tom Reed Gold Min. Co. 164 Cal. 497, 43 L.R.A.(N.S.) 1112, 129 Pac. 781. At common law the rule is that a stockholder has the right of inspection, when he desires to do so for proper purposes and with proper motives. It appears that this rule resulted in the officers or stockholders sitting in trial on the motives of the applicant for desiring to make the examination, and in the case of minority stockholders it frequently resulted in their being deprived of their lawful rights to inspect or examine property in which they owned an interest. The statutory provisions were undoubtedly enacted for the protection of minority stockholders, and to prevent the delays incident to determining through legal proceedings the motives of those desiring to examine the corporate records. It is not for courts to read into a plain statute qualifications which would destroy the meaning of its plain language.

We need not enter into further discussion of the authorities. It would serve no purpose, in view of the issues herein. The trial court found that the plaintiffs sought the examination of the books of the exchange for lawful purposes and at a proper time. After carefully examining the hundreds of pages of evidence taken, most of which is wholly incompetent for any purpose whatever, we are satisfied that there is sufficient competent evidence to sustain the findings of the trial court. The question before us is not one of the preponderance of evidence, but whether there is any substantial competent evidence to sustain the findings. For latest authority on this, see State ex rel. Trimble v. Minneapolis, St. P. & S. Ste. M. R. Co. 28 N. D. 621, 150 N. W. 463. It is patent that it would be impossible to set out the evidence in detail. Even such as is competent is so intermingled with hearsay, as to con-

troversies between outside parties and business interests, that it would require the work of weeks to separate it and place the competent evidence by itself. All that it is necessary to decide here is the question of evidence to sustain the findings. Having determined that there is ample evidence to sustain them, we can do naught but affirm the trial court, which granted the writ commanding the defendants to permit a complete examination of the books of the corporation of which they are officers. It is affirmed.

## On Petition for Rehearing.

PER CURIAM. Counsel for appellants have filed a petition for a rehearing, but they urge nothing which was not urged and fully considered on the first hearing. Notwithstanding this we have, in view of the importance of the case, carefully re-examined the questions involved, and after such reconsideration we see no reason to change our views as above expressed.

Counsel in their petition contend that the rule announced by this court in the case at bar is contrary to the holding of the United States Supreme Court in the case of Guthrie v. Harkness, 199 U. S. 156, 50 L. ed. 133, 26 Sup. Ct. Rep. 4, 4 Ann. Cas. 433. Counsel are clearly in error in such contention. That decision, both in the lower court and in the supreme court of the state, as well as in the United States Supreme Court, was decided under the common-law rule, and not under the statute of Utah, like that in North Dakota, and this, for the obvious reason that it involved the right of a stockholder to examine the books of a national bank, and the rule of the statute was therefore inapplicable. It was conceded by counsel that the state statute did not give the right to examine the books of a national bank, and the common-law rule was therefore invoked by the court. It is clearly apparent, therefore, that such decision is not in point here.

To avoid any erroneous inferences from this opinion, let it be stated that no approval is placed upon the conduct of either party to this action, nor of the practices of stock exchanges or chambers of commerce of Minneapolis and Duluth, which defendants have sought to connect with plaintiff, and incidentally attempted to try out in this action, wherein such associations are not parties. Even though plaintiffs may belong to

them, and may intend to assist them in competing for business against defendants, or assist them in injuring defendants, yet that is no defense. That a right may be flagrantly abused does not destroy the right, or the privilege of its enforcement in the courts. When the abuse amounts to the commission of a crime the penal laws apply to the perpetrators, and equity will not permit abuse of its process to aid in crime. But no such question is here under any proof made. There is proof conceding without questioning its admissibility that such third parties, nonresident associations, or its members or officials, have pursued a course of oppressive and vindictive conduct by advertising this suit and its purposes and misrepresentation to the probable injury of defendants. There are also charges that abuses and misconduct of such board of trade toward the grain growers of this state exist to an extent demanding, imperatively, Federal supervision and the strong arm of the Federal government to protect the grain growers of this agricultural state, whose market is beyond their control, and now probably a subject of private exploitation. This is mentioned that it may not be assumed that the members of this court are not alive to all the possibilities and probabilities discussed, and also that no comfort may be taken from this decision by any third party wrongdoers who may be indirectly permitted license resulting in abuse thereby. This is but incidentally and not necessarily involved. This case strikes deeper than all this, and directly involves the rights of every minority stockholder of corporate stock in every domestic corporation in this state to inspect at all times the books of the corporation of which he is such stockholder, and that, too, without question or delay, which in practice may amount to denial. To illustrate application of the rule announced, it may be observed that the stockholder rights of every member of this defendant association holding stock are likewise adjudged and guaranteed by this very holding as against usurpation or infringement or question by the majority, as are also those of every minority stockholder in every other association, whether it be an elevator, creamery, coal mining, stock raising, mercantile, or state banking corporation. The rule measuring rights must be uniform as to all similarly situated. That the motives of defendant may have been commendable in denying inspection of its books, while the right of inspection may have been sought to further oppression and abuse, yet motives are insufficient to warrant a denial

of inspection when to do so is to jeopardize the rights of every minority stockholder, as it is indisputable that the right to question the motive of any stockholder desiring inspection of corporate books carries with it the power to pass judgment on his motives, and on that right of judgment, however erroneous or wrongfully asserted, virtually deny a right of inspection altogether by compelling resort to the courts whenever a majority of stockholders may elect to force the minority to get their rights only at the end of a lawsuit. The legislature, entirely familiar with the exigencies of this and other similar situations, has declared the policy to be pursued by its mandate, that minority rights shall be respected and enforced even under a situation identical with that of the majority stockholders, the defendants.

The petition for rehearing is denied.