ANTON LIEN, Respondent, v. THE SAVINGS, LOAN, & TRUST COMPANY, a Domestic Corporation; G. S. Youmans, President of the Savings, Loan, & Trust Company, a Domestic Corporation; and Anthony Walton, Secretary of the Savings, Loan, & Trust Company, a Domestic Corporation, Appellants.

(174 N. W. 621.)

**Mandamus — equitable discretion of court.**

1. In an action for mandamus the court may exercise equitable discretion and refuse the writ where the purposes for its issuance are not shown clearly to be proper.

**Mandamus — nature of action — not triable *de novo* before the supreme court.**

2. Although an action for mandamus in this state is a special proceeding and upon appeal is not triable *de novo* before the supreme court, nevertheless the court, in the exercise of its equitable discretion, will search the conscience of the transaction and if improper motives are shown deny the issuance of the writ.

**Mandamus — equitable discretion of supreme court — weight accorded to findings of trial court.**

3. In a special proceeding for a writ of mandamus, where the court exercises its equitable discretion, the same conclusiveness is not accorded to the findings of the trial court as are accorded to such findings in a law action tried to the court, a jury being waived.

**Mandamus — examination of records of corporations — effect of improper motives, or purposes in asking examination.**

4. In a special proceeding seeking the writ of mandamus to compel the right of a stockholder to examine the records and transactions of a corporation

---

Note.—On right of stockholders to inspect books of the corporation, see notes in 45 L.R.A. 446; 20 L.R.A.(N.S.) 185; 30 L.R.A.(N.S.) 290; and 42 L.R.A.(N.S.) 332.

On right of stockholder to inspect the books of his corporation and the remedies for its enforcement, see note in 107 Am. St. Rep. 674.

pursuant to § 4560, Comp. Laws 1913, the court will not presume that such statute was enacted with the legislative intent to permit one, by its use, to perpetrate a wrong upon another, or to act as a license to a stockholder to use his right for the purpose of injuring or destroying his own corporation and to benefit or promote a rival corporation; and, in the exercise of its equitable discretion, it will refuse such writ where such or analogous improper motives or purposes are shown, expressly overruling to such extent Schmidt v. Anderson, 29 N. D. 262.

**Mandamus — inspection of books by attorney for stockholder.**

5. In an action for mandamus to enforce the right of a stockholder to inspect the records, books, and assets of a corporation, it is *held* that the court, in the exercise of its equitable discretion, will refuse to permit an attorney for the stockholder to examine and make such investigation, where improper conduct and improper motives on his part are shown.

**Mandamus — inspection of books by attorney for stockholder.**

6. In such action where the attorney for the stockholder upon a previous occasion had effected a sale of stock in the defendant corporation through means of a threat that he would occasion worry and expense to the corporation by an examination of its assets, and where in the instant case he sought again to sell the stock of his client to such corporation, and if it was not purchased to make a complete and full investigation of all its assets, it is *held* that this court, in exercising its equitable discretion and in searching the conscience of the transaction, will refuse the writ so far as it permits or directs the examination of the records, books, and assets of such corporation by such attorney.

Opinion filed July 19, 1919. Rehearing denied September 8, 1919.

Action to compel the inspection of books, records, and assets of the defendant corporation by the plaintiff and his attorney.

From a judgment awarding peremptory writ of mandamus in favor of the plaintiff, in the District Court of Ward County, *Leighton,* J., defendants have appealed.

Judgment modified, with directions to the trial court to refuse permission to make such examination by such attorney.

*Fisk & Murphy,* for appellants.

While some courts appear to go so far as to hold that the motive or purpose of a stockholder in seeking inspection is immaterial under the statute, still the courts are quite unanimous in agreeing that the right

to the writ is discretionary. White v. Manter, 109 Me. 408, 42 L.R.A. 332, 84 Atl. 890.

We believe that the proper rule would be to qualify the so-called right of inspection and make it subject to the discretion of the court to refuse inspection when desired for some evil, improper, or unlawful purpose. Weihenmayer v. Bitner, 88 Md. 325, 45 L.R.A. 446, 42 Atl. 245; Eton v. Manter, 114 Me. 259, 95 Atl. 948; State v. Mondia & Y. Stage Co. 110 Minn. 193, 124 N. W. 971, 125 N. W. 676.

There is an implied limitation upon the statutory right, that the same shall not be exercised from idle curiosity nor for improper or unlawful motives. Weihenmayer v. Bitner, supra, 45 L.R.A. 446, and note; Kuhback v. Irving Cut Glass Co. 20 L.R.A.(N.S.) 185; White v. Manter, 42 L.R.A.(N.S.) 332, and note; State ex rel. Brumley v. Jessup & M. Paper Co. 30 L.R.A.(N.S.) 290.

*Lewis & Bach,* for the respondent.

In the United States the prevailing doctrine appears to be that the individual shareholders in a corporation have the same right as the members of an ordinary partnership to examine their company's books, although they have no power to interfere with the company's management. Guthrie v. Harkness, 50 L. ed. 130, 132.

The right of a stockholder to examine the books for any motive whatever, so long as the purpose of the examination is not to aid a crime, is thus fully established in this state, by statute and the decision of this court construing it. The overwhelming weight of authority elsewhere is in favor of such a construction of the statute. 7 R. C. L. pp. 322, 323; Schmidt v. Anderson, 29 N. D. 262; Weihenmayer v. Bitner (Md.) 45 L.R.A. 446; Werner v. Chicago City R. Co. (Ill.) 92 N. E. 643; Kimball v. Dern (Utah) 35 L.R.A.(N.S.) 134; Johnson v. Langdon (Cal.) 87 Am. St. Rep. 156; State v. St. Louis & S. F. R. Co. (Mo.) 29 Mo. App. 301; Cincinnati & V. Co. v. Hoffmeister (Ohio) 48 L.R.A. 732; People v. Keesville A. C. & L. R. Co. 106 App. Div. 349.

Judicial discretion is reversed only for abuse, not for exercise in a manner in which the reviewing court might not itself have exercised it. State v. Fabrick, 16 N. D. 94.

A stockholder may have assistance in the examination, and may make copies. It is unnecessary that the statute shall specifically so provide.

See notes in 45 L.R.A. 446, 449, 450, and 20 L.R.A. (N.S.) 185, 197, where numerous cases are quoted; also 7 R. C. L. 324, § 301.

People v. Consolidated Nat. Bank, 105 App. Div. 409. The right of inspection carries with it the right to make such extracts from the books as would enable the shareholder to retain the information disclosed by the inspection.

Clawson v. Clayton (Utah) 93 Pac. 729. The right is not a personal one in the sense that the examination must be personally conducted, but the right thus conferred may be exercised by the agent.

Ellsworth v. Dorwart (Iowa) supra. "Plaintiff had the right to have his attorney with him, and the attorney had the right to an amanuensis." Mutter v. Eastern & M. R. Co. L. R. 38 Ch. Div. 92, quoted in 35 L.R.A. (N.S.) 138.

"The president and directors of every corporation shall keep full, fair, and correct accounts of their transactions, which shall be open at all times to the inspection of the stockholders or members." Weihenmayer v. Bitner, supra.

BRONSON, J. This is an action for mandamus by a stockholder to compel the inspection of corporate records and books. The defendants have appealed from the judgment of the trial court awarding a peremptory writ. The facts are substantially as follows:

The plaintiff is fifty-six years old. He is a Norwegian, neither understanding nor reading English. He is a single man, and for the last ten years has worked out, earning on an average of $100 to $125 per year. In September, 1916, he bought thirteen shares of stock in the defendant company of the par value of $100 per share, paying $120 per share. Later he bought thirteen shares more. Ever since he owned the stock he has received 12 per cent dividends January 1st of each year. His own attorney in the record terms his client to be a subnormal specimen. The plaintiff went to the annual stockholders' meeting in January, 1917 and 1918, and to a special stockholders' meeting in October, 1917. He testifies that at one of these meetings when they were voting to change the name he got the impression that the stock was not very good. He does not remember clearly. He became afraid that he was going to lose his money. In March or April, 1918, he went to see Attorney Nestos. He told his attorney that he wanted $3,120 for his stock. Nestos saw the president of the company and inquired

concerning the circumstances under which the stock was sold to the plaintiff. This was explained, and the president in addition offered to loan the plaintiff up to the par value of the stock. Nestos afterwards advised the president that the plaintiff went home satisfied. Since February 10, 1918, the plaintiff has worked for one Peter Hall. Plaintiff had Peter Hall write a letter to the president about the stock. Later when the plaintiff wanted to see someone in Minot about the stock, Hall sent him to one Rasmussen. He saw Rasmussen. He went with Hall to see an attorney, his present counsel. Mr. Hall prepared a power of attorney in English, translated it to the plaintiff, and plaintiff signed it. This power of attorney authorized his attorneys, his present counsel, to handle for him his certificates of stock, and to examine the books of the company if they deemed it advisable, and to bring such action as they deemed proper to protect his interests. One of such counsel testifies that on June 29, 1918, he went to defendants' offices, saw the president, Mr. Youmans, and advised him that he had been employed by plaintiff to sell to the president the stock if he desired to buy, or otherwise, to examine the books of the company. He further testifies that Youmans used rough language towards him, refused to either buy the stock or permit examination of the books or records of the corporation. Thereafter he made a written demand to examine, with a stenographer and accountant, all the records, books, and assets of the corporation, and upon refusal of the corporation this action was instituted by the issuance of an alternative writ of mandamus. There is testimony by the plaintiff that he desires to have the books investigated. There is also testimony by his attorney that he has no improper motive in desiring to make such investigation. However, it appears in the evidence that plaintiff's attorney suggested the idea of investigating the books to the plaintiff; that his attorney first talked about the matter with Rasmussen; that said Rasmussen is president of the First National Bank of Carpio; that the president of the defendant bank had litigation with Rasmussen in reference to Savings Deposit Bank of Minot, in which Youmans was formerly interested; that Youmans is also in a new bank at Carpio, a competitor of the Bank of Rasmussen; that the relation between such parties is far from friendly. Upon cross-examination the plaintiff admits that he wants to sell his stock; that he wants $3,120 for it; that he never tried to sell it to anyone except

to Youmans; that he never made any complaint to Youmans that the stock was not worth the money he paid for it; that he never tried to borrow any money from the company or Youmans on it, and that he himself never went to Youmans and demanded that he buy the stock. The record discloses, pursuant to the testimony of Youmans, that at a previous time the attorney for the plaintiff handled some other stock against the company in a similar way; that he came to Youmans with the threat that if Youmans did not buy that stock he would examine the assets to the last and make all kinds of trouble and unnecessary expense and trouble, that he would bring his stenographers there; that such attorney made threats every time he came to the office that he was going to come in with his attorneys and put the defendants' company to much expense. On rebuttal this attorney states that he made no threats that he knew of, although he admits that, on such previous occasion, he offered to sell such stock to Youmans, which Youmans said he could not take. That then he made a demand to examine the books, which request was granted and arrangements made therefor. That after Youmans concluded to buy the stock, he, Youmans, inquired of him why he wanted to examine the books, and he replied that he figured that Youmans did not want his books examined.

The president of the defendant company testifies that he is willing to permit the plaintiff in any manner to examine the books or papers and also any attorney for the plaintiff, if his attitude and behavior were satisfactory to him. That it was the threats and intimidation that occasioned the action taken.

This action came to trial in November, 1918, and, in January, 1919, the trial court made findings in favor of the plaintiff, pursuant to which a peremptory writ of mandamus was entered requiring the appellants to submit to an examination of all their records, books, and assets by the plaintiff, his counsel herein, or such other attorney as plaintiff may hereafter select, together with the assistance of a stenographer and accountant.

The appellants have assigned some ten specifications of error. These are deemed to be without merit excepting as they concern the statutory right of a stockholder to examine the books and records of a corporation, and the right of the court in a mandamus action to exercise an equitable discretion where improper motives are disclosed in the record.

This appeal is not triable *de novo*. State ex rel. Bickford v. Fabrick, 16 N. D. 94, 112 N. W. 74. The usual presumption is accorded that the findings of the trial court are correct. Nevertheless, proceedings to secure a writ of mandamus in this state are special proceedings. Chap. 42 (Comp. Laws 1913, §§ 8457–8469). Although, historically and generally, mandamus is deemed to be a law action, yet, it is to be exercised upon equitable principles. 26 Cyc. 145. Every mandamus, in a manner seeks the aid of equity. It ordinarily will issue where there exists no adequate remedy at law. As a special proceeding it is tried to the court, and not to a jury. There is manifest reason why the court in the exercise of this writ should search the entire conscience of the transaction. It is evident, therefore, that the same conclusiveness should not attach to the findings of the trial court in such special proceeding that do attach to such findings, where a law action is tried to the court, a jury being waived.

The trial court, in its findings, determined that no improper motives for the inspection of the books and records were shown or established, and, in a memorandum opinion, stated that it is immaterial what the motive may be where the stockholder seeks to use the right granted to him by the statute.

The respondent cites some authorities to the effect that the right to the writ is not discretionary. Likewise, Schmidt v. Anderson, 29 N. D. 262, 150 N. W. 871, is cited, wherein it is directly stated that it is immaterial if the stockholder desires to inspect the books in the interest of a rival corporation, or to aid him in securing business which might otherwise go to a corporation whose books he seeks to inspect, upon the ground that the statute (Comp. Laws 1913, § 4560) is mandatory, and where the right is shown it is absolute. As far as the language in such case seeks to assert or imply that in a special proceeding of mandamus, no equitable discretion exists, and that the court must issue the writ like a mere adding machine, upon the showing that a person is a stockholder and desires to make inspection, no matter what his motives may be, the case should be and is hereby expressly overruled. See Eaton v. Manter, 114 Me. 259, 95 Atl. 948; State ex rel. Humphrey v. Monida & Y. Stage Co. 110 Minn. 193, 124 N. W. 971, 125 N. W. 676; notes in 45 L.R.A. 446; 20 L.R.A.(N.S.) 185; 42 L.R.A.(N.S.) 332; and 107 Am. St. Rep. 674. It is shocking to the American sense

of law and justice that a statutory right, through the protecting and directing arm of the law, may be made an instrumentality of perpetrating a wrong. Section 4560, Comp. Laws 1913, grants to a stockholder full right to inspect the records, books, and all the business transactions of his corporation. By such inspection he may learn, or even compile and preserve (Comp. Laws 1913, § 1016), all of its business and trade secrets. It is a wholly beneficial law serving to protect and apprise stockholders concerning their property rights and guarding against wrongdoing, when properly administered and interpreted. No court should presume that this law was enacted with the legislative intent to permit one, by its use, to perpetrate a wrong upon another or to act as a license to a stockholder to use this right for the purpose of injuring and destroying his own corporation and to benefit or promote a rival corporation. Laws are presumed to be enacted for the protection of society and persons in their personal and property rights. There is no presumption that such laws can or may be used for purposes of accomplishing or perpetrating a wrong.

A consideration of the evidence in this record reveals this outstanding feature permeating the entire case of the plaintiff; namely, that the plaintiff desires to sell his stock to the defendant corporation or its president, and that if he cannot so sell, he is disposed to occasion expense and trouble by a vast, laborious examination of all of the assets of the defendant corporation. The defendants are willing, and so assert, in the record, to permit the plaintiff himself to examine the books in any manner, or to permit any attorney that is satisfactory to so do. It is further apparent in this record that this action and this method of procedure has been suggested, initiated, and maintained by the attorney for the plaintiff. He states that his client is subnormal. He is desirous himself to investigate these books. Furthermore, it appears that this very attorney, on a previous occasion, used this statutory right as a means, at least indirectly, of compelling the defendant corporation to buy the stock of his client in order to avoid a laborious investigation. There is no claim in the record that the defendant company is insolvent; that its officers have been guilty of fraud, deception, or improper acts. There is, further, nothing in the record that discloses any refusal whatsoever to give to the plaintiff himself full information concerning the corporation; that shows any dissatisfaction concerning

the plaintiff's stock excepting his mere suspicion.  The attorney for the plaintiff states his purpose by testimony proceeding from himself that he sought to sell the stock of his client to this company, and upon their refusal to buy he intended to make a complete investigation and to bring a stenographer and an accountant so to do.  The attorney justifies this conduct; he asserts that it is wholly proper for him so to do. It is now necessary for this court to criticize this conduct in no unmeasured terms.  The law profession has a code of ethics not excelled by any other profession.  It is the duty of the court, as well as the attorneys, who are officers of the courts, to exemplify, by practice, as well as by precept, the high ethics of the profession.  It should be unnecessary to state that it is improper for an officer of this court, an attorney, to seek to compel the sale of the stock of his client to a corporation for the benefit of himself or his client, upon the threat, express or implied, to use himself the statutory right of his client to force such sale and to occasion embarrassment or expense to the corporation.  Such conduct is not only repugnant to the high sense of a lawyer's duty in enforcing the rights of his client upon the ethical grounds, but is repugnant to the sense of fair dealings between man and man.  See A. B. A. Canons Ethics, §§ 19–30, 794, 2 C. L. 1913.  Upon this record, such attorney for the plaintiff is not entitled to the aid of the court through a writ of mandamus permitting him and his assistants to examine and inspect completely all of the records, books, and assets of the defendant corporation.  The trial court erred accordingly in so directing.  The appellants have conceded in the record their willingness to have the plaintiff or any suitable party that he may desire to assist, to examine in any manner the books and records.  The law grants this right to the plaintiff; it is conceded by the appellants.  The court will enforce that right. This appeal therefore practically concerns such attorney, his conduct, and his insistence that he personally is entitled to make such inspection. It would seem that this appeal might well have been avoided, after the appellants made the concession in the record, by eliminating the personal desire of the attorney to make such examination.

It is accordingly ordered that the peremptory writ of mandamus herein be vacated, with directions to issue a new peremptory writ, without costs, permitting the plaintiff, and any person or persons necessary to assist him, suitable to the parties, to make inspection of any and all

records, books, and business transactions of the defendant company; and in the event that the parties are unable to agree upon a person or persons necessary to assist such plaintiff, the court shall appoint some disinterested person or persons, who will be obligated by the court not to divulge or give any information secured by such examination except to the plaintiff; such inspection to be reasonably conducted within business hours as the court may designate. The appellants will recover the costs of this appeal.

GRACE, J., concurs.

ROBINSON, J. I concur in the result and in the censure of the proceedings by counsel.

BIRDZELL, J. (concurring in part and dissenting in part). Not being in accord with the majority of the court in all the reasoning leading to the conclusion arrived at, and believing that the conclusion is in part erroneous, I find it necessary to state the facts as I see them in order that my views of the case may be better understood.

This is an appeal from a judgment awarding to the plaintiff a peremptory writ of mandamus. The writ directs the defendants to forthwith allow the plaintiff, by and through his attorney, John H. Lewis, together with such accountant and stenographer as the plaintiff or his attorney may bring with him for such purpose, to examine all of the books, papers, records, and assets of the defendant corporation; to make copies thereof, such examination and inspection to be made at any time during the business hours of the corporation or from 9 A. M. to 3 P. M. of every day except Sunday and legal holidays. An alternative writ of mandamus was issued by the district judge, based on the petition and affidavit of John H. Lewis, and the affidavit of one William Bakeman. Upon the hearing on the return day of the alternative writ, the following facts were established by the testimony of witnesses: Anton Lien, the plaintiff, some time prior to the commencement of this proceeding, became the owner of fifty-two shares of stock of the par value of $2,600 in the Savings, Loan, & Trust Company, having purchased the stock at 120 or for the price of $3,120. So far as it appears from the record, he purchased the stock voluntarily and without any special solicitation

on behalf of anyone representing any of the defendants. During the time the plaintiff was a stockholder, he had received annual dividends of 12 per cent upon his stock. Early in the spring of 1918 the plaintiff consulted R. A. Nestos, an attorney in Minot, with reference to his investment in the defendant company, whereupon Nestos made inquiries of the defendant Youmans, president of the company, the results of which were evidently communicated to the plaintiff and served to satisfy him, at least for the time being. In the month of June, 1918, the plaintiff consulted John H. Lewis, another attorney, and on the same day gave to his firm a power of attorney to handle his certificates of stock, to examine the books of the company, and to bring any action necessary to protect his interests. Prior to the time he consulted Lewis, the plaintiff was unacquainted with him, and it appears that he was directed to Lewis by S. J. Rasmussen, president of the First National Bank of Carpio, North Dakota, or by P. O. Hall. Lien had done business with Rasmussen's bank in Carpio, and it seems that there was some business rivalry between Rasmussen and the defendant Youmans. Hall had been acquainted with Lien for some thirteen years, Lien having worked for him at different times during that period. On the occasion of Lien's first visit to Lewis's office, Hall accompanied him and acted as interpreter. On or about June 29th, Lewis went to the office of the defendant corporation and interviewed the defendant Youmans, its president, informing him that he had been employed by Lien to sell Youmans his stock, or, if the latter did not desire to buy the same, to examine the books of the defendant corporation; and Youmans indicated that he did not want to buy the stock, and that he would not allow Lewis to examine the books of the defendant corporation without an order of the district court. On October 18, 1918, Lewis, accompanied by William Bakeman, went again to the office of the defendant corporation and served upon the defendant Walton, the secretary of the corporation, a written demand that he be permitted to examine the books, papers, records, and assets of the corporation; whereupon Walton referred Lewis to Youmans, upon whom he also served a duplicate of the demand. After reading the demand, Youmans refused to comply with it. It appears that Youmans manifested some anger on this occasion, and, judging from the record, the provocation consisted of recollections of a prior unpleasant experience with the same attorney when he had

made a similar demand on behalf of a client whose stock was ultimately purchased by Youmans personally. On that occasion, as well as this, the demand was in the alternative, that Youmans purchase the stock or permit an examination of the books on behalf of the client desiring to sell.

Youmans testified that he would have been glad to have let Mr. Lien, personally, look over the books if he wished to do so, and that any stockholder could get anything he wanted by coming like a gentleman and asking for it; also that he would be willing to let a stockholder's attorney look at them except when he comes "in a threatening attitude and tries to force his way," but that he was not willing to allow him to bring a stenographer and an accountant without an order of the district court. He also gave as a reason for the refusal, to use his own words, that he "figured that Lewis was after—that he was in a conspiracy with those other fellows and my competitors, especially with Rasmussen at Carpio; that what he wanted to do and they wanted to do was to get possession of the list of stockholders and their postoffice addresses, so that they could prejudice them and get them to start similar actions."

It appears that the investment of the plaintiff in the stock of the defendant corporation comprises the major portion of his property, and represents the accumulation of his earnings extending over a number of years.

The question for decision upon this record is the right of the stockholder Anton Lien to inspect the books and records of the defendant corporation with a view to ascertaining the value of his stock, so that he might intelligently deal with the same. We cannot, with propriety, dispose of this right by considering it as secondary to any personal quarrel there may be between Youmans, the president of the defendant company, and Lewis, the plaintiff's attorney.

Section 4560, Compiled Laws of 1913, requires all corporations for profit "to keep a record of all their business transactions; a journal of all meetings of their directors, members, or stockholders, with the time and place of holding the same, whether regular or special . . ." and that "the record must embrace every act done or ordered to be done; who were present and who were absent;." etc. It also requires that "all such records *shall be open* to the inspection of any director, member, or stockholder or creditor of the corporation." The same section provides

for the keeping of a record "to be known as the 'stock and transfer book,' in which are required to be entered alphabetically the names of the stockholders." This book is required to be *kept open* to the inspection of any stockholder, member, or creditor.

This statute treats of two sets of records,—(1) a record of business transactions and a journal of meetings; and (2) a stock and transfer record. The first is required *to be open* to inspection and the second *to be kept open* to inspection. If there is any distinction between these two requirements, it is in favor of a more ready access on the part of the stockholders to the stock and transfer book than to the records of business transactions and journal of meetings. The distinction between the right of inspection of the two classes of records designated in our statutes is one that has received both legislative and judicial recognition in at least one state (New York). See People ex rel. Clason v. Nassau Ferry Co. 86 Hun, 128, 33 N. Y. Supp. 244; People ex rel. Gunst v. Goldstein, 37 App. Div. 550, 56 N. Y. Supp. 306; People ex rel. Harriman v. Paton, 20 Abb. N. C. 195; People ex rel. Callanan v. Keeseville, A. C. & L. C. R. Co. 106 App. Div. 349, 94 N. Y. Supp. 555. The right to inspect the stock record is there held to be broader than the right to inspect the record of business transactions. It seems clear that our statute gives to every stockholder the right to ascertain who are co-owners of the stock of the corporation, and this right is not at all limited by the fact that there may be a large number of stockholders in the enterprise. We do not find in the statutes anywhere evidence of a legislative intention to protect as confidential the list of stockholders in banking corporations. On the contrary, § 2116, Compiled Laws of 1913, requires that a duplicate copy of a statement showing the full and correct list of stockholders, with names and residences, be filed with the county auditor, and no provision is made that will protect the list so filed from inspection by anyone who may be interested therein. Thus, so far as the principal objection made by Youmans is concerned (that he feared his competitors desired to obtain a list of the stockholders), it is groundless, as the list could presumably be obtained from another source; at any rate it is not a confidential list.

No showing is made in this record to the effect that this particular examination would subject the defendant to any more inconvenience than would be necessarily incident to any examination at any time. It

goes without saying that any examination had under the provisions of § 4560 must be so ordered as to be reasonable from a practical viewpoint, but since there is nothing in the record from which it can be assumed that the inspection ordered is unreasonable, there is no occasion to modify the writ in this particular. The principal objection to the inspection being groundless, and the inspection permitted being reasonable from the standpoint of inconvenience to the defendant, it remains to be seen whether it should be denied on account of the motives of the plaintiff or his attorney.

Counsel for the appellant, in their argument, request the court to reexamine the question of law decided in the case of Schmidt v. Anderson, 29 N. D. 262, 150 N. W. 871, wherein it was held that the provisions of § 4560, Compiled Laws of 1913, were mandatory, and that the right of inspection would not be denied on account of the fact that the stockholder desired to make use of the information obtained to aid a rival in business. In the opinion of the writer, it is unnecessary to reexamine the holding in the case referred to; for, upon a careful examination of the record presented, he is convinced that there is no evidence to warrant a finding that the plaintiff was actuated by any improper motive. While there is some evidence from which it might be inferred that the attitude of the plaintiff's attorney was threatening; that he was likely to make improper use of the legal right of the stockholder to know the condition of the corporation; and that he threatened to subject the corporation to the inconvenience of an inspection as a means of coercing the president of the corporation to buy his client's stock,—the writer is satisfied from the record that the client was not acting from any improper motives in exercising his right. In fact, there is no evidence whatever that he was acting from bad motives. It is his right to safeguard his own hard-earned savings that is involved, and this, as above indicated, must not be subordinated to any personal quarrel between an attorney and an officer of the corporation.

Since there is nothing in this record which can, in any event, abridge the stockholder's right, the principle involved in Schmidt v. Anderson, supra, is clearly not controlling here.

On account of the facts, however, which go to show that business rivals of the defendants may be more or less interested in this proceeding, it is thought proper to remark that, in case any misuse of the informa-

tion is made or threatened, the defendants have their remedy to prevent it.

Since it appears that the objections raised by the defendants are based upon an apparent connection between the plaintiff's attorney and parties whose interests conflict with those of the defendants, the question of examination through agents is involved. The propriety of allowing the examination to be made by the attorney designated is not, however, urged by counsel. It would seem to be clear that if the stockholder be a mere tool of the designing competitors, and that fact appears to the reasonable satisfaction of the court, the court would be amply justified in refusing to permit the agents or attorneys so asking to avail themselves of the stockholder's right to have access to the records of the corporation. The statute does not throw the records of the corporation open to competitors to make any use thereof that they may see fit. It only gives the right to the stockholder, director, or creditor; and while the free exercise of the right thus defined in the statute might readily result in giving information to those not fairly entitled thereto, and while it may be difficult to protect the corporation from such consequences, nevertheless, where the likelihood of abuse through designing agents fairly appears to the court, it should not actively aid those who are not stockholders in carrying out such illegal designs. If, therefore, it should appear that there is reasonable ground to suspect the presence of improper motives on the part of those who are active in arousing the interest of the stockholder, the court should require the right of inspection to be so exercised as not to aid in the unlawful design. This it might do by suggesting the appointment of another agent. Manifestly, it is not particularly the function of an attorney at law to act as an expert accountant or appraiser of securities. He performs his full duty when he sees that the rights of his client are protected. Neither is it any part of the duties of an attorney, as such, to act as a selling agent for stock a client may own in a corporation, though he may render valuable advice in that connection. The attorney, then, cannot complain of any order designed to prevent the information from being misused.

In the case of State ex rel. Humphrey v. Monida & Y. Stage Co. 110 Minn. 193, 124 N. W. 971, 125 N. W. 676, it was sought by mandamus to compel the defendants to permit a stockholder to examine the books and accounts of the corporation. In answer to the petition, the

defendant alleged that the relator and one of his attorneys had entered into a conspiracy to injure the corporation, and that they desired the information for the purpose of harassing and annoying the corporation and to aid its competitors in business. It appeared upon the hearing that there had been friction between the attorney mentioned and the company for some time prior to the institution of the mandamus proceedings, and from this fact the court found as a legal conclusion that the petitioner was entitled to the peremptory writ, but that the writ should provide that the petitioner or such attorney or agent as he may select, other than the one already designated, should be allowed to inspect the books and records. It was held on appeal that, on account of these facts, the portion of the order of the court excluding the particular attorney was justified, and the distinction referred to above, and which we deem to be sound, between the right of the stockholder to inspect and the right of a particular agent or attorney to conduct the investigation, was drawn. The supreme court, however, left it to the discretion of the trial court to determine the sufficiency of the facts warranting the exclusion of the particular attorney.

In the *instant case there is a finding that there is no evidence of a motive on the part of the plaintiff in seeking to examine* the records of the corporation to vex, annoy, and harass the corporation, or to aid its competitors or persons hostile to it. But there is no finding with reference to the attitude of the agent or attorney, or as to whether, in view of past relations, it were deemed by the court to be inadvisable that he be permitted to inspect the books; although, as a conclusion of law, it is stated that the "plaintiff is entitled either by himself or by his attorney, J. H. Lewis, or such attorney as he may hereafter select to examine," etc.

As indicated above, counsel for the appellants have not argued that the attorney designated in the power of attorney should be excluded from participation in any examination that might be ordered; and, in the absence of such contention on this appeal, it has seemed to the writer that the cause should be more properly remanded to the trial court for a finding on such matter in the light of the views of this court as expressed concerning it, and that as so modified the judgment should be affirmed.

CHRISTIANSON, Ch. J. (concurring in part and dissenting in part). The plaintiff who is a stockholder in the defendant corporation instituted a mandamus proceeding to compel the defendants to permit plaintiff to examine the books of the corporation. The record shows that the different witnesses, including the plaintiff, his attorney, and the officers of the defendant corporation, appeared personally before the trial court, and were sworn and examined as witnesses. The trial resulted in findings and conclusions in favor of the plaintiff, awarding the plaintiff a peremptory writ of mandamus as prayed for.

It is undisputed that the plaintiff is a stockholder in the defendant corporation, and has invested in its stock the greater portions of the savings of a lifetime. The right of a stockholder to inspect the books of a corporation was recognized at common law; and in this state such right is clearly and unequivocally granted by § 4560, Comp. Laws 1913, which requires all corporations for profit "to keep a record of all their business transactions; a journal of all meetings of their directors, members or stockholders, with the time and place of holding the same, whether regular or special . . . ," and that "the record must embrace every act done or ordered to be done; who were present and who were absent," etc. It also requires that "all such records *shall be open* to the inspection of any director, member, or stockholder or creditor of the corporation." Not only is the language of the statute plain and specific, but it was construed by this court in Schmidt v. Anderson, 29 N. D. 262, 150 N. W. 871. That decision was handed down January 9, 1915, while the fourteenth legislative assembly was in session. If the rule announced in Schmidt v. Anderson was contrary to the intention of the lawmakers, it could readily have been changed by legislative enactment during the 1915, 1917, or 1919 sessions of the legislature. Such change could have been proposed by the people by initiative petition to the legislative assemblies which convened in 1917 and 1919. Yet, although three successive legislative assemblies impliedly assented to the construction placed upon § 4560 in Schmidt v. Anderson, a bare majority of this court by judicial fiat set aside the established law of the state, and mulcted the plaintiff for costs of the appeal because he relied upon the law of the state, and sought to invoke a right granted to him thereby.

If the agents of the stockholders—the officers and directors—may

refuse to permit a stockholder to exercise the right of inspection which the statute grants, on the ground that his motives are improper, and assert such improper motives as a defense in a mandamus proceeding, then the right granted by the statute will oftentimes be entirely defeated. When cause for examination arises there is generally more or less friction. The officers can always raise the question of motive, and impose upon the stockholder the burden of litigating this question. In many instances such burden would of itself be sufficient to deter the stockholder from attempting to enforce his statutory right. The result in this case is a very apt illustration of what is likely to happen to a stockholder who seeks to exercise the right to inspect,—under the rule announced by the majority members in this case. Here we have an old, illiterate man, who has invested the hard-earned savings of a lifetime in the stock of a corporation. For some reason he becomes apprehensive of the soundness or safety of his investment. He consults an attorney. Of course the only way in which anyone could tell whether there was anything wrong with the management of the corporation was by an inspection of its business records. But such inspection would mean expense. Plaintiff has only one interest,—to preserve his savings. So he authorizes his attorney to sell the stock for what he paid for it, and if that cannot be done to make an inspection. The attorney submits the proposition to the officers of the corporation. Now the attorney is censured for his conduct, and the plaintiff is mulcted in costs, and told that if he wants to make such examination he must engage an expert accountant for the purpose. Well may plaintiff ask: Is this a manifestation of "the American sense of law and justice?" What has become of the right granted to me by the laws of this state? Does it really exist, or is it a mere illusion?

The observation made in the majority opinion, "that there is no claim in the record that the defendant company is insolvent; that its officers have been guilty of fraud, deception, or improper acts," was effectively answered by the supreme court of New Jersey in Huylar v. Cragin Cattle Co. 40 N. J. Eq. 392, 2 Atl. 274, as follows: "To say that they [the stockholders] have the right [of examination], but that it can be enforced only when they have ascertained, in some way without the books, that their affairs have been mismanaged, or that their interests are in danger, is practically to deny the right in the majority

of cases. Oftentimes frauds are discoverable only by examination of the books by an expert accountant. The books are not the private property of the directors or managers, but are the records of their transactions as trustees for the stockholders."

Nor do I believe that the distinction which the majority members attempt to draw between the weight to be given to findings of fact in a case like this, and in other actions at law tried by the court without a jury, is sound. If—as the majority members hold—motive is to be a determining factor, then the reasons for the weight usually given to the findings of fact of the trial court are peculiarly applicable. Motive is a mental state or process which induces an act of volition; a determining impulse. Century Dict. Manifestly the trial judge who sees the parties, and hears their story, and observes their demeanor, is in a far better position to determine such mental state or process than are the members of this court, who have only the cold paper record before them. As was well said by this court in Jasper v. Hazen, 4 N. D. 1, 5, 23 L.R.A. 58, 58 N. W. 454: "Every practitioner of extended experience knows how absolutely essential it is, in order to ascertain the truth from parol evidence, that the tribunal who is to pass upon the evidence should see the witness upon the stand. The printed page containing the evidence gives, oftentimes, a radically different impression from that made at the hearing. The opportunity of observing the witnesses and their interest or lack of interest in the case, their prejudices and passions, their mental capacities and powers of observation and memory, and the use they have made of these powers, their entire deportment on the stand, and conduct under cross-examination,—these and many other circumstances that attend personal observation are undoubted auxiliaries in ascertaining truth. Of all these helps this court is deprived, while the trial court possesses them fully. It is obvious that, if these things be disregarded, mistakes will be made, and injustice be done."

It is well to remember that under the Constitution and laws of this state the district court is invested with power to try and determine all questions of law and fact in cases like the one before us, and that this court has appellate jurisdiction only. Const. §§ 86, 103. If the writ of mandamus is discretionary in cases like the one before us (as the majority members say it is), then manifestly the discretion to be exercised is that of the trial court. And under the most elementary prin-

ciples, this court on appeal can only interfere when an abuse of discretion is shown. I do not believe that anyone can say that there was any abuse of discretion in this case. The judgment appealed from should be affirmed without modification.